STANTON, *Appellant*, v. BOSCHERT *et al.*

DIVISION ONE.

1. **Attachment of Land:** LIEN. The filing in the recorder's office by the sheriff of an abstract of the attachment, as required by Revised Statutes, 1879, section 420, is necessary to perfect an attachment lien on land.

2. **Fraudulent Conveyance.** The evidence in this case examined and *held* to show that a deed of trust executed by the debtor was made in fraud of creditors.

3. **Attachment:** ESTOPPEL. Where two attachments are levied on the same land and it is sold under both, the fact that the prior attaching creditor obtains an order to have the surplus proceeds arising from the sale under the junior attachment applied to the satisfaction of his debt does not estop him, as against the holder of a fraudulent deed of trust given before any of the attachments, from claiming to be the prior attaching creditor.

*Appeal from St. Louis City Circuit Court.*—HON. SHEPARD BARCLAY, Judge.

REVERSED AND REMANDED.

*Eber Peacock* for appellant.

(1) The levy of the attachment in the case of John Stanton *v.* Alois Boschert, and the lien created thereby, were prior in point of time to the levies and liens of the attachments in the cases of R. F. Wheeler *et al. v.* Alois Boschert and of I. W. Overstreet *et al. v.* Alois Boschert, and the court should have so found. *First.* The default of Sheriff Mason, a defendant in this case, as well as the answer of defendant, F. F. Henseler, in failing to deny the same, admit such priority. *Second.* The evidence in the case also establishes such fact. *Lackey v. Seibert*, 23 Mo. 83; *Taylor v. Mixter*, 11 Pick. 347; Drake on Attachment [6 Ed.]

p. 234.  *Third.*  The answer of F. F. Henseler is a plea
of confession and avoidance, and, unless so construed,
estoppel is not pleaded to be available as a defense; it
must be specially pleaded, and be pleaded with cer-
tainty.  Bigelow on Estoppel, p. 712; *Bray v. Mar-
shall,* 75 Mo. 327; *Noble v. Blount,* 77 Mo. 235;
*Hammerslough v. Cheatham,* 84 Mo. 13; *Miller v.
Anderson,* 19 Mo. App. 71 ; *Weise v. Moore,* 22 Mo. App.
531.  ( 2)  The deed of trust, dated September 19, 1884.
recorded in book 740, page 191, purporting to be executed
by Alois Boschert and wife to F. F. Henseler's trustee,
is void as against plaintiff herein, because: *First.*  Said
deed was made by Boschert with the intent to fraud-
ulently hinder and delay his creditors, of whom plain-
tiff was one, and Henseler participated in it with
knowledge of such purpose.  *Burgert v. Borchert,* 59
Mo. 80 ; *Rupe v. Alkire,* 77 Mo. 641 ; *Dougherty v.
Cooper,* 77 Mo. 528 ; *Albert v. Besel,* 88 Mo. 150 ; R. S.
1879, sec. 2497 ; R. S. 1889, sec. 5170.  *Second.* Because
it was made without any consideration passing for it,
and plaintiff was a creditor of Boschert at the time of
its execution.  The record in the attachment case of
Stanton *v.* Boschert, number 65827, read in evidence
on the trial below, is conclusive as to the defendant
Boschert, on the question of fraud and voluntary char-
acter of the deed of trust.  And the failure of defendant
Henseler in his answer to deny such allegations is con-
clusive as to him.  *Payne v. Stanton,* 59 Mo. 158 ;
*Hurley v. Taylor,* 78 Mo. 238 ; *Lionberger v. Baker,*
83 Mo. 447 ; *Bank v. Overall,* 16 Mo. App. 510.  ( 3 ) The
purchase by F. F. Henseler at sheriff's sale under exe-
cution in the Wheeler and Overstreet cases against
Boschert of the Boschert interest in the land inured to
the benefit of Boschert and vested no absolute title in
Henseler.  *First.*  Because, at the time of said purchase,
Henseler was the debtor of Boschert to the extent of
the $7,200 covered by the deed of trust between them,
dated September 19, 1884 ; which deed, while void as

to creditors, was good *inter partes*, and the evidence shows that Henseler never paid any money therefor. *Allen v. Berry*, 50 Mo. 90; *Bobb v. Woodward*, 50 Mo. 95; *Walsh v. Ketchum*, 84 Mo. 427; R. S. 1879, sec. 2497. *Second.* Because the evidence shows that the purchase was for the benefit of Boschert, who has ever since enjoyed the property. *State to use v. Jacob*, 2 Mo. App. 183. A resulting trust would, therefore, arise in favor of Boschert, upon which the deed acquired by Stanton would operate and vest the title in Stanton. *Bobb v. Woodward*, 50 Mo. 95; *Herrington v. Herrington*, 27 Mo. 560; *Henderson v. Dickey*, 50 Mo. 161; *Harrison v. Smith*, 83 Mo. 210. (4) Respondent, F. F. Henseler, relies on equitable estoppel as a defense to this action, and the court below erred in dismissing the bill on that ground, because: *First.* Equitable estoppel cannot be invoked to sustain a fraud, and fraud is admitted by Henseler's answer, because not denied. 2 Herman on Estoppel, 1211, side p. 1080; *Matlison v. Ausmuss*, 50 Mo. 551; Bigelow on Estoppel, 712; *Bobb v. Woodward*, 42 Mo. 482. *Second.* Estoppel cannot be sustained in this case, because if there was no priority of attachment lien in Stanton's case, the surplus realized at sheriff's sale under the Wheeler and Overstreet executions was properly applicable to the next subsequent execution. *Strawbridge v. Clark*, 52 Mo. 21. *Third.* If the levy in the Stanton attachment case created a prior lien to the Wheeler and Overstreet liens, estoppel cannot be evoked, because the attachment levy creates no interest in the land, nor in anywise affects the title or possession of the defendant in the attachment, and in the event the attachment is sustained and results in a judgment and sale under execution, all that the purchaser at such sale would acquire would be whatever interest the defendant had at the time the attachment was levied; such a one would be a purchaser *pendente lite.* The interests acquired at the respective sheriff's sales are adverse. Drake on Attachments

[5 Ed.] 234; *Ensworth v. King*, 50 Mo. 477; *Durrett v. Hulse*, 67 Mo. 201; *Turner v. Babb*, 60 Mo. 342; *Hall v. Morgan*, 79 Mo. 50. The order of the circuit court directing the sheriff to apply the surplus of $55.49 to the partial satisfaction of the Stanton execution, was a judicial determination that it legally belonged there. R. S. 1879, sec. 447; R. S. 1889, sec. 550. (5) The confederation between Boschert and Henseler in maintaining a fraud being shown, the title acquired at the sheriff's sale by Henseler thus became tainted with the fraud. *Armstrong v. Toler*, 11 Wheaton, 258.

*H. B. Davis* for respondent Henseler.

(1) The appellant is estopped, by his own act, from claiming that his attachment is a prior lien to the Wheeler and Overstreet attachments. *Strawbridge v. Clark*, 52 Mo. 21. (2) The time of the attachment liens is determined by the return of the sheriff, and can only be controverted in an action against the sheriff for a false return. *Hallowell v. Page*, 24 Mo. 590; *Phillipps v. Evans*, 64 Mo. 17. (3) The appellant, by taking the benefit of the surplus, is estopped from setting up that the sale to Henseler was fraudulent. *Stoller v. Coates*, 88 Mo. 514; *Valentine v. Decker*, 43 Mo. 583; *Sutweiler v. Lackman*, 23 Mo. 168.

BLACK, J.—The defendant Boschert, being the owner of a parcel of land in St. Louis, having a front of two hundred feet by a depth of about one hundred and thirty feet, conveyed the same to a trustee by deed, dated the nineteenth of September, 1884, to secure his note of that date for $7,000, payable in five years to Frank F. Henseler. There was a dwelling-house and a two-story slaughter-house and outhouses on the property, and it was incumbered by two prior deeds of trust amounting to $4,750.

On the twenty-second of September, 1884, Wheeler and others and Overstreet and others commenced two

suits by attachment against Boschert, and in the after-
noon of that day caused the writs to be levied upon per-
sonal property found in and about the slaughter-house.
The attorney prosecuting these suits directed the sheriff
to levy upon the real estate, saying he would furnish a
description of the same the next day.   On the following
day, the twenty-third, Stanton, the plaintiff in the
present suit, commenced another suit by attachment
against Boschert, and at the same time furnished the
sheriff with a description of the real estate, and the
sheriff indorsed a levy on this Stanton writ at ten min-
utes after eleven o'clock in the forenoon.   At that time
the sheriff had made no levy of the Wheeler and Over-
street writs upon the real estate, no description having
been furnished as promised ; but in about half an hour
thereafter he levied those writs by making an indorse-
ment thereon, using the description of the land furnished
by Stanton.   He dated these levies on the twenty-
second instead of the twenty-third, when made, thus
making the Stanton levy appear to be subsequent in
point of time.   The abstract of the Stanton attachment
was filed with the recorder of deeds at 1: 25 P. M. of the
twenty-third, and the abstract in the other cases was filed
three minutes later.   This difference in the time of filing
the abstracts with the recorder was intentional on the
part of the sheriff.

Notwithstanding the defendant interposed pleas in
abatement, the attachments were all sustained, and
Stanton recovered judgment for $5,838, Wheeler and
others for $1,558, and Overstreet and others for $336.
The attached real estate, except that set off as a home-
stead, was sold on March 24, 1885.   It was sold under
the Stanton execution first and he became the purchaser
at $1,300, and it was then sold under the other two exe-
cutions to Hoffman for $1,800, who purchased for, and
the deed under that sale was made to, Henseler.

Stanton commenced this suit in equity in November,
1885, against Boschert, the sheriff and Henseler, setting

up the foregoing facts and alleging that the deed of trust from Boschert, dated the nineteenth of September, 1884, for the benefit of Henseler, and the purchase of the property by Henseler at the sheriff's sale, were fraudu-lent transactions as against the creditors of Boschert, and asking that those deeds be set aside, and that his attachment be declared the prior lien.

1.    There can be no doubt but the Overstreet and Wheeler attachments were sued out in good faith, and we shall first consider the question of priority of the attachments as between the attaching creditors them-selves.

Prior to the revision of 1835, it was the duty of the officer in making an attachment to go to the premises and declare, in the presence of one or more persons, that he attached the property, and to state in his return the names of the persons in whose presence the attachment was levied.   The Revised Statutes of 1835 omitted these acts of notoriety on the part of the officer, and so the law continued down to 1864, when it was amended in some respects not necessary to be noticed here.   Acts of 1863–4, p. 7.   By the Revised Statutes of 1865 and 1879, it is provided :

When lands are to be attached, the officer shall describe the same in his return and declare that he attached all the right, title and interest of the defend-ant; "and shall, also, file in the recorder's office of the county where the real estate is situate an abstract of the attachment, showing the names of the parties to the suit, and the amount of the debt, the date of the levy, and a description of the real estate levied on by the same, which shall be duly recorded in the land records, and the recording paid for by the officer, and charged and collected as other costs;" and the officer shall, moreover, give notice to the actual tenants, if any, at least ten days before the return day of the writ.

That part of the above statute included in quota-tion marks and relating to the abstract to be filed with

the recorder became a part of the statute for the first time in 1865. Before this date and after 1835, it had been often ruled that a failure to give the tenant ten days' notice before the return day of the writ would not defeat the attachment, and this for the reason that the giving of notice to the tenant constituted no part of the ceremony required to make a levy of the attachment writ. *Lackey v. Seibert*, 23 Mo. 85; *Durossett's Adm'r v. Hale*, 38 Mo. 346; *Huxley v. Harrold*, 62 Mo. 516. The same cases also hold that the lien of the attachment dated from the moment the levy was indorsed upon the writ, though the writ still remained in the hands of the officer making the levy.

The third requirement of the statute, namely, the giving of the ten days' notice to the tenant before the return day of the writ is the same as in former statutes and should receive the same construction. But the new provision requiring an abstract of the levy to be filed with the recorder is different in its purpose. Writs of attachment are issued by the clerk, returnable to the next term of court, and levies may be made by the officer to whom they are addressed at any time before the return term. Before this amendment it was, therefore, necessary for purchasers and other attaching creditors to inquire of all officers who might have prior attachment writs in their hands. The amendment was designed to remedy this evil. The statute, it is true, does not in terms declare that the lien of the attachment shall date from the time the abstract is filed with the recorder of deeds, as is the case in some of the states ( *Davis Sewing Machine Co. v. Whitney*, 61 Mich. 518 ); but unless that is its effect it must fail in accomplishing the purpose for which the amendment was designed.

The filing of the abstract is an act to be done at the time of indorsing the levy upon the writ, and is an act entering into and constituting a part of a levy of an attachment upon lands, and is a condition precedent to a valid attachment lien. An attachment lien is a

creature of the statute, and there can be no such lien until there has been a fair compliance with the conditions prescribed for acquiring the same, and the filing of an abstract with the recorder is one of those conditions. There is almost always a race of diligence between attaching creditors, and we can see but one rule to determine the question of priority under the present statute, and that is this, that the lien dates from the time the abstract of the levy is filed with the recorder, and the creditor prior in point of time in this respect has the prior lien. If such priority is procured by fraud then the lien so procured will be postponed, but in this case the Stanton abstract was of right filed first, for his levy was first in point of time. It follows that the Stanton attachment constituted the prior lien, and the sheriff's deed to him conveyed all the title that Boschert had at the date of the attachment. Henseler acquired nothing by virtue of his purchase at the sheriff's sale under the Wheeler and Overstreet executions.

2. With the foregoing conclusion it becomes necessary to consider the issue of fact tendered by the plaintiff that the deed of trust from Boschert to Henseler to secure the note of $7,000 due in five years was a contrivance to defraud creditors. The evidence in substance is this: At that date Boschert owed debts to a large amount, and his creditors were pressing him, some of them threatening to attach, and all this to the knowledge of Henseler. According to Henseler's evidence taken on the trial of one of the attachment suits, and read in evidence by the plaintiff on the trial of this case, Boschert applied to him for a loan of $10,000. He agreed to loan Boschert $5,000 on the real estate, deducting $800 which Boschert owed him. Five years' interest was added, making the note $7,000, and he executed to Boschert a check for $4,200 on account of this alleged loan. Henseler says he at the same time loaned Boschert $1,000 for one year, and to secure the

same took a mortgage on personal property in and about the slaughter-house. He says he also purchased from Boschert's wife another parcel of real estate at the price of $2,000.

These transactions were all made and the deed, deed of trust and mortgage executed at the same time. Henseler says he gave Boschert at that time checks amounting to $7,200; but his further examination and other evidence disclosed the fact that Boschert gave these checks back to Henseler on the same day, and that Henseler turned them over to the firm of Steinweider & Sellner, who collected them through their bank. That firm, in three or four days thereafter, gave Henseler their checks for a like amount, and he collected them. This manipulation of checks, it will be seen, was a mere sham, and Boschert did not receive a cent on account of them. This state of facts appearing, Henseler then testified that he paid Boschert $7,200 in cash on the evening of the nineteenth of September, that he had the money in his safe, and that he had kept it there for nine months. He admits that during that time he borrowed money from his bankers. He states that he gave the checks to Boschert to show the transaction on his ledger or cash book, but later on in his evidence it appeared that neither the checks nor the payment of the cash appeared upon his books.

Boschert says he got the money from Henseler, but after the nineteenth of September, and that he got it at different times. He gives no satisfactory account of the payment to him of any money whatever on account of the deed of trust. Says he has had an accounting with Henseler since the date of the deed of trust and that there are $300 or $400 due Henseler yet. The mortgaged personal property was sold in the Wheeler and Overstreet attachment proceedings and purchased by Hoffman at the request of Henseler and then turned over to Mrs. Boschert, and Mr. Boschert continued his

business at the same place, but in the name of his wife. He claims to occupy the property in question as the tenant of Henseler, but there is no evidence that he pays any rents.

Enough of the leading features of the evidence has been given to show that the deed of trust was a mere contrivance to defraud the creditors of Boschert. That it was a fraudulent transaction is not questioned in the brief filed for and in behalf of the defendants. As against the plaintiff the deed of trust cannot, and ought not to, stand, and should be set aside because made in fraud of Boschert's creditors.

3.    The defendant Henseler, in his answer in this case, besides a general denial, sets up and made proof of certain facts which he contends estop the plaintiff from disputing the validity of the deed of trust and from now claiming to be the prior attaching creditor. The facts proved are these : The attached real estate was sold, as we have said, on March 24, 1885, first under Stanton's execution and purchased by Stanton, and then under the Wheeler and Overstreet executions and purchased by Hoffman for Henseler, to whom the sheriff executed a deed. This sale of the real estate under the Wheeler and Overstreet executions paid those debts and costs and left a surplus of $59.94. On the motion of Stanton, the court ordered the sheriff to apply this surplus on the balance due on the Stanton execution, and it was so applied. This order was made in the Stanton attachment case, after the sheriff had executed the deeds to Stanton and to Henseler.

If, as we have held, Stanton was the prior attaching creditor, then the surplus proceeds arising from the sale under the junior attachments would not go to him, but would go to subsequent attaching creditors, if any there had been, but, as there were none, the surplus belonged to Boschert. Now we do not see how the receipt of this money by Stanton can operate as an estoppel in favor of Henseler, for his rights, whatever they were, were

fixed long before the order was made. He had nothing to do with the surplus, and was in no manner misled by the payment of it to Stanton.

Again, there is nothing in this record to show that Stanton applied for or procured the order on the ground that he was a subsequent attaching creditor.

The sheriff had in his hands an unsatisfied execution in favor of Stanton against Boschert, and he had the small amount of money in his hands belonging to Boschert; and this money the court ordered him to apply on 'the execution. This order in no way affected Henseler, and he is the only party who contends for an estoppel.

From the views before expressed, it follows that the decree in this case should be reversed and the cause remanded with directions to the circuit court to enter up a decree setting aside the deed of trust from Boschert to Henseler and declaring the plaintiff the prior attaching creditor, and it is so ordered. BARCLAY, J., not sitting ; SHERWOOD, C. J., and BRACE, J., concur.