## LACKEY, Respondent, v. SEIBERT AND OTHERS, Appellants.

1. The Law Commissioner of St. Louis county has the authority to issue writs of attachment against the property of persons sued in his court.
2. The levy of a writ of attachment upon land creates a charge or lien from the moment of the levy; a sale therefore, under an execution issued upon the judgment against the defendant in the attachment, relates back to the time of the levy, and passes the title to the purchaser, unaffected by any encumbrances created or conveyances made subsequently to such levy.

3. The requisites of a levy of a writ of attachment upon real estate. *Prima facie*, it should be presumed that a writ of attachment was levied as early as the date under which the return is made.

4. Where there has been a personal service of a writ of attachment upon the defendant, the attachment will not, it seems, be defeated as against subsequent purchasers, by a failure of the officer making return to state in his return the fact that notice of the attachment has been given to the actual tenants, and the names of those tenants.

*Appeal from St. Louis Land Court.*

This was an action in the nature of an action of ejectment to recover possession of a lot in the city of St. Louis.

The answer denies the title of plaintiff, and asserts title in August Seibert, the principal defendant, under whom the other defendants were holding as tenants. Both parties claim title under Eugene Riehl. The title of the plaintiff is based upon the following facts shown in proof on the trial:

On the 6th day of February, 1854, Lackey filed in the office of the Law Commissioner of St. Louis county a petition against Eugene Riehl, demanding one hundred dollars " on account of services rendered in selling certain real estate according to verbal agreement." To this petition there was appended an affidavit, by Lackey, and a bond, such as are used in cases of attachment issuing out of the Circuit Court. Thereupon, on the same 6th day of February, 1854, there went forth from the Law Commissioner a writ, under his seal and sign manual, addressed to the marshal of St. Louis county, directing him to " attach Eugene Riehl by all and singular his lands and tenements, goods, chattels, &c., and to summon said Riehl to appear before the Law Commissioner's Court on the first Monday of April," etc. The return on this writ, as appears on the record, is in the following terms:

" Executed this writ by delivering a true copy of the same and petition to the within named defendant, and by attaching (at the request of the plaintiff) the following described real estate as the property of said defendant [describing the prop-

erty in dispute]. St. Louis, February 6, 1854. David Bayles, marshal. By Henry McMeins, deputy."

Judgment by default was rendered against the said Riehl April 11th, 1854 ; and the lot in controversy was levied on under an execution issued May 1st, 1854, and sold to Lackey. The marshal's deed conveying the said lot to Lackey is dated May 25th, 1854, and the consideration expressed is ninety dollars. The regularity of the proceedings, under the judgment and execution, was not called in question. The defendant, August Seibert, claimed title to the lot in controversy as a purchaser for value, without notice, under a deed from Eugene Riehl and wife. This deed is dated March 3d, 1854, and the consideration expressed therein was two thousand dollars. There was no evidence tending to throw doubt upon the *bona fides* of this transaction ; nor to prove *actual* notice to the purchaser, Seibert, of any adversary claim on the part of Lackey, further than the pendency of the attachment suit against Riehl above referred to.

Plaintiff proved that he had demanded of defendants possession of the premises claimed in this suit, and that such demand had been refused.

The court below, on the plaintiff's motion, gave the two following instructions : " 1. If the property in question was attached at the suit of Hugh Lackey against Eugene Riehl, on the 6th of February, 1854, before the Law Commissioner's Court of St. Louis county, and the said property was sold under an execution against the said Riehl in the said cause, and said Lackey became the purchaser thereof at said sale as shown by the deed from Bayles as marshal, then Lackey, under said deed, became the purchaser and owner of all the right, title and interest which the said Riehl had in and to said property on the 6th day of February, 1854." " 2. The deed of Riehl and wife to Seibert is subject to the suit by attachment of Lackey against Riehl ; and the title under a judgment, execution, and sale in said suit, is a better title than the conveyance made subsequently to the attachment by Riehl and wife to Seibert."

The court below refused the following instruction asked by defendants :

"If the jury believe from the evidence that the deed from Eugene Riehl to August Seibert, read in evidence, is genuine, the title of Seibert is a better title than that shown by the plaintiff, and in that case the jury should find for the defendants."

Exceptions were duly taken by defendants.

*R. M. Field* and *Kribben*, for appellants.  The real question here is, whether, in the proceedings in the suit by attachment before the law commissioner, the plaintiff in that suit acquired a *lien* effectual to overreach the title of the defendants, and this question may properly be subdivided as follows : 1st. Had the law commissioner authority under the law to issue a writ of attachment against the real estate ? 2d.  Supposing such general authority to exist, were the actual proceedings in this case effectual to bind the estate ?

I.  The argument of the respondent has been that the Law Commissioner's Court, having been constituted a *court of record*, by the act of 1851, (Sess. Acts, 1851, p. 241,) is authorized, as a *court of record*, by section 1, of article 1, of the general practice act, (R. C. 1845, p. 804,) to issue the statutory writ of attachment against real estate on the application of a suitor.  This construction overlooks the exception contained in that section, and the prohibition contained in the second section of the act referred to ; and is subject to the following objections :

1st.  By the common law, the authority of *courts of record* to issue writs of attachment against real estate did not exist. No such process was known.  The custom of London authorized the attachment of debts ; and beyond this, nothing like our present process of attachment was known to the English law.  It is certain that this peculiar process of attachment was not incident to courts of record by the common law.

2d.  The powers of *courts of record* are defined with great pains and particularity by the legislature, in 72 sections of the

Lackey v. Seibert.

act in relation to courts. (R. C. 1845, tit. Courts—judicial powers.) This act certainly confers no power on these courts to issue a writ of attachment against real estate.

3d. A construction of the law to the effect that every court of record, as such, has authority to issue the statutory writ of attachment against real estate, leads to manifest absurdity. All the county courts, the courts of probate, the criminal courts, this Supreme court, and perhaps other courts, are constituted *courts of record.* It is agreed on all hands that none of these courts possess the power in question.

4th. The general practice act of 1845 was not intended to confer authority on all courts of record to issue attachments, but simply to prescribe a rule of practice for courts of record having such authority. The particular clause of the statute relied on by the other side, therefore, amounts only to saying that the mode of commencing suits in courts of record is two-fold, by summons and by attachment.

5th. The same general practice act of 1845, in its second section, provides that a declaration shall, in the first instance, be in all cases filed in the clerk's office. But the Law Commissioner had no clerk. The construction of the law adopted by the plaintiff below would oust the Law Commissioner of all jurisdiction by attachment or summons.

6th. The attachment law provides for a notice by publication to an absent defendant to appear at the next term. But prior to 1853, the Law Commissioner had no terms. This law, then, as to this officer, was an impracticability.

7th. By the act of 1851, the process of the Law Commissioner was to be issued to the sheriff or marshal of the county, or to any constable of St. Louis township. This township had then four constables. It is not decent to suppose that the legislature really intended that a farmer in Bonhomme or Meramec should be compelled to apply to all these officers in a distant township, to learn whether he had a clear title to his farm.

8th. Under the attachment act, writs might be issued to dif-

ferent counties. It is not perceived how this provision can be reconciled with the particular injunction of the special law, that the process of the Law Commissioner shall be directed to officers of St. Louis county.

9th. The attachment law of 1845 is, in terms, applicable only to the Circuit Court in respect to real estate. The legislature, however, at the same session, gave to the St. Louis Court of Common Pleas the same jurisdiction and authority, in this respect, by the following section: "Sec. 8. The practice, *process and proceedings*, in the court hereby established, shall be the same in all respects as is or may be provided by the law for the government of the Circuit Court, except as herein otherwise specially provided." At the same legislative session of 1845, the Hannibal Court of Common Pleas was created, and the provision just quoted was applied to that court. (Sess. Acts, 1845, p. 67, sec. 11) So, too, in respect to Cape Girardeau Court of Common Pleas. (Sess. Acts, 1851, p. 203.) Again, to the Weston Court of Common Pleas. (Sess. Acts, 1851, p. 205, sec. 15.) And also to St. Louis Land Court. (Sess. Acts, 1853, p. 91, sec. 7.) Now it is remarkable that this provision in the acts just mentioned is not to be found in any of the acts relating to the Law Commissioner; and it is conceived that this circumstance furnishes a strong argument against the pretended authority of the Law Commissioner to issue attachments against real estate.

II. 1st. Notice of the attachment does not appear to have been given to the actual tenants of the lot in controversy. If it should be said on the other side, that, on an examination of the record, it does not appear that there were any actual tenants of the ground, under the debtor, at the time of the attachment, the answer is, that the debtor must, in such case, be regarded as being himself in actual possession, and he ought to have been notified of the attachment. No notice of the attachment to him appears. 2d. By the express terms of the attachment act, no valid attachment lien on real estate could be created until the officer making such attachment had stated such at-

tachment and notice in his return. The actual time of the return by the officer of the writ of attachment nowhere appears on the record. The formal date is certainly no evidence that the writ was then returned. Up to the point of time when the writ of attachment was actually returned to the office of the Law Commissioner, there were no reasonable means of ascertaining that any property had been attached on the writ. In such state of things, the title of the appellants, as purchasers in good faith, ought to be regarded as perfect.

*Hart & Jecko*, for respondent.

LEONARD, Judge, delivered the opinion of the court.

The questions submitted to us in this case are, whether the Law Commissioner's Court of this county may proceed by attachment, and, if so, whether the proceedings here were sufficient to bind the estate of the defendant in the land from the 6th of February, 1854, (the time when the attachment was levied,) so as to conclude a purchaser from him subsequent to that time ; and we think both questions must be answered in the affirmative.

1. We refer to the case of Watson against the County of St. Louis, (16 Mo. 91,) for an account of the legislation in relation to this court, from its origin to the year 1851 ; since which time two other acts have passed, both of the 24th of February, 1853—one prescribing six terms a year, and the other making the marshal of St. Louis county the executive officer of the court. We may add here that the first section of the act of 1851 declares that the court shall be deemed, to all intents and purposes, a *court of record*, with all the *powers and duties* of such a court under the laws of the state ; and by the second section, it is always open for the transaction of business, except on Sundays. In the third section, which contains the grant of jurisdiction, " power and jurisdiction" is given, among other things, " in all actions founded upon contract, when the debt or balance due or damages claimed, exclusive of interest, shall not exceed one hundred and fifty dollars."

In our system of jurisprudence there are no original writs in the English sense of the term. Here, jurisdiction is conferred upon the judicial tribunals by the constitution and laws of the state, and not by original writs, issued for that purpose. Our original writs are mere judicial process to subject the party to the jurisdiction of the court in the particular case, and this process, in ordinary cases, when the suit is for the redress of a civil injury between party and party, is either a summons to be served upon him or an attachment against his property. (Prac. Act, 1845, art. 1, sec. 1.) These are the modes prescribed by the general law of the land for the institution of suits in courts of record, and therefore, when the Law Commissioner's Court was made a court of recor], and clothed with civil jurisdiction in suits between party and party for civil injuries, it acquired, of course, authority, and was bound, to proceed in administering the relief in the manner prescribed by the general law for the government of all such courts. There is not a question about the power of this court *at common law*, as a court of record, but about its authority an l obligation as a court of record, *under the statute law* of the state, to exercise its jurisdiction in granting the relief which it is authorized to administer according to the general law appliable to all courts of record in similar cases ; and we can not perceive any of the absurdities that it is supposed will result from this construction, nor any difficulty in the way of making it effectual.

2. Although there has been a good deal of discussion in the courts of justice (ex parte Foster, 2 Story's Rep. 139 ; Davenfort, v. Tiltan, 10 Metc. 320 ; Kettridge v. Warren, 14 N. H. 509 ; Fisher v. Vose, 3 Robinson, La., 457) as to the character and extent of the lien acquired by an attachment, upon mesne process, it is agreed upon all hands to be a valid charge upon the land from the moment the attachment is levied, so that a sale upon the execution relates back to that time, and passes the title to the purchaser, discharged of all encumbrances and dispositions subsequently made by the debtor.

3. The only question, then, for us here is, whether this at-

tachment was lawfully levied on the day indicated in the return. All that our statute (R. C. 1845, tit. Attachment, art. 1, sec. 12) prescribes on the subject is, that "the officer shall briefly describe the same (the levying of the attachment) in his return, stating the quantity and situation of the land, and declare that he has attached all the right of the party in the same, and shall moreover give notice to the actual tenants, if any, at least ten days before the return day of the writ, and state the fact of such notice and the names of the tenants in his return." Formerly, this was otherwise. Under the original attachment law of 1807, (1 Terr. Laws, 145,) it was the duty of the officer to go to the place and there declare in the presence of one or more creditable men of the neighborhood, that he attached the property ; and, under the act of 1818, (1 Terr. Laws, 601,) he was required to state in his return the names of the persons in whose presence the attachment was levied. This continued to be the law down to the revision of 1835, when the requirement of any act of notoriety, upon the ground or elsewhere, in order to give publicity to the attachment of the property, was altogether omitted, and the present provision adopted. And the practice, it is believed, has ever since been here, as it is said to be in Massachusetts, (Perrin v. Leverett, 13 Mass. 130,) for the officer, after ascertaining the description of the land, to levy the attachment, by an endorsement to that effect, upon the writ, made by him in his office, or wherever else he might happen to be, without going near the land or calling any witness to the act, which he was at liberty to do in secret. It does not seem to have been the policy of our legislature, in 1835, or since, to require any public notoriety to be given to the levying of the attachment ; nor have they provided any guards against the abuses that may occur in these proceedings, on the part of executive officers, by reason of the secret manner in which they are allowed to execute the writs. It is obvious that no purchaser is safe against attachment liens unless he inquire for them of the proper officers, who may have such writs in their hands *unreturned,* or executed and returned to some remote

county. This evil, however, can only be remedied by the legislature. It existed in the Massachusetts law down to the year 1835, when it was enacted, that, in order to render the attachment valid against a subsequent purchaser for value, or a subsequent attaching creditor, a copy of the writ and of the return of the attachment should be filed in the office of the clerk of the county where the land lay, within three days after the attachment, and that in case the attachment should take effect from the time it was made, but otherwise as against such purchasers and creditors only from the time the copy was so filed. (Rev. Stats. of Mass. 550, secs. 28, 29 ; Coffin v. Ray, 1 Metc. 212 ; Taylor v. Mix, 11 Pick. 346 ; Emerson v. Upton, 9 Pick. 168.) We, however, have no such provision, and under our law, the attachment, when levied, creates from *that moment* a valid charge upon the land against all persons ; and we suppose it must be taken at least *prima facie* to have been levied upon the day that the officer returns it to have been done ; and as he here returns it under date of the 6th of February, we must, of course, presume that it was done as early as that day.

4. It is objected, however, that in order to render the attachment complete, so as to create the lien, it is not enough that the levy be endorsed on the writ, but that it is also necessary that notice of the attachment should be given to the actual tenant, if any, ten days before the return day, and that this fact, together with the name of the tenant, should be stated in the officer's return. It is to be observed that this notice is not required to be given at the time the attachment is levied, and does not seem to be part of the ceremony required to constitute a levy of the attachment, and adopted in order to give public notice of the fact, but was intended for the benefit of the debtor, by providing another security, where the proceeding might be without personal notice, against his land being taken from him by a judicial proceeding, of which he had no notice in fact. And we do not think that an omission of this character, in the return, even assuming that there was a tenant in possession,

ought to be allowed to defeat the sale. Such a construction of these proceedings, founded upon a mere formal matter, without substance, in cases like the present, where there is personal notice of the proceeding, would not be for the interest, generally, of either debtor or creditor, however beneficially it might operate in a single case on account of the peculiar hardship of that case. The judgment is affirmed.