WALTER, Plaintiff in Error, v. SCOFIELD et al.

167   537
p167   563
167   537
176   675

**Division One, March 12, 1902.**

1. **Time Within which Appeals and Errors are Taken:** DATE FROM WHICH RECKONED. A writ of error is in time if sued out within three years (one year now) from the date on which the motion for a new trial was denied in the circuit court. The true date of the rendition of the judgment appealed from, or to correct which a writ of error is sued out, is the date upon which the motion for a new trial is overruled, and that is the date on which final judgment is rendered in the trial court. (Overruling Ham v. Public Schools, 34 Mo. 181).

2. **Attachment:** NOTICE BY PUBLICATION: FAILURE TO NOTIFY TENANT. In an attachment suit against real property, the court fails to acquire jurisdiction unless there is actual notice to the tenant in possession of the land ten days before the return day of the writ, and a recital in the return that such notice has been given, in all cases except where the owner has been personally served with process. And a judgment founded on notice by publication to the owner, where no notice has been given to the tenant, as the statute requires, is void, and the sheriff's sale thereunder conveys no title either to him or any subsequent grantees through him. (Following the reasoning of and distinguishing Lackey v. Seibert, 23 Mo. 85, and overruling the *obiter* on this point in Durossett's Admr. v. Hale, 38 Mo. l. c. 348.)

Error to Cass Circuit Court.—*Hon. W. W. Wood,* Judge.

REVERSED AND REMANDED *(with directions).*

*Chas. H. Winston* for plaintiff in error.

(1) The undisputed evidence shows that at the sheriff's sale all the property was knocked down by the sheriff to Alice A. Fish; and that Strother was not a purchaser of any of the property at that sale, and that the sheriff made no deed to Alice A. Fish. The deed of conveyance from the sheriff

to Strother, purporting to convey the interest and title of Jacob Walter, is without authority of law and is void. No title has been conveyed by or under.the sale. R. S. 1889, sec. 4954; R. S. 1899, sec. 3210; Strain v. Murphy, 49 Mo. 337; Louis v. Koenig, 55 Mo. 451; Davis v. Green, 102 Mo. 170; Lewis v. Chapman, 59 Mo. 371. The authority of the sheriff to make a deed is derived from the statute. Ware v. Johnson, 55 Mo. 500. Inasmuch as that authority is against common right, the statute must be strictly construed and strictly followed. Ryan v. Carr, 46 Mo. 483. (2) Inasmuch as the sheriff who executed Scofield's writ of attachment against Jacob Walter did not give notice to the actual tenants of the lands and tenements sought to be attached, at least ten days before the return day of the writ, and state the fact of such notice and the names of such tenants in his return; and inasmuch as defendant Jacob Walter was not notified personally nor summoned and did not appear in that action, the circuit court had no power to render judgment against Jacob Walter and award execution thereon against said lands and tenements. The judgment should be set aside, and all deeds and sales made under or in pursuance of such judgment or execution should be declared null and void. R. S. 1889, sec. 388; Lackey v. Seibert, 23 Mo. 94; Galpin v. Page, 18 Wall. (U. S.) 350. (3) The position of Scofield was one of the highest trust and of special confidence in his relation to Jacob Walter, his client, at the times of the judgment and sale in the attachment suit, and so long as that relationship continued Scofield could obtain no rights by judgment, sale or execution deed as against Jacob Walter or his property without Jacob Walter's consent. Eoff v. Irvine, 108 Mo. 378; Perry on Trusts, p. 246, sec. 202. The burden is upon Scofield and the other defendants claiming through him to vindicate from all suspicion the transactions by which they claim to have acquired Jacob Walter's property without his consent. Perry on Trusts, pp. 246-247, sec. 202. And if they can not produce evidence

which puts the transaction clearly beyond all doubt or question, the judgment, sale and deeds must be set aside.     Perry on Trusts, p. 248, sec. 202.     The secret suit by attachment and the treachery of Scofield would have been fraudulent even if no attempt were made thereby to rob, under the forms of law, without actual notice to Jacob Walter his client.     In such a proceeding Scofield "was and is bound to pursue the. hair line of legal and formal strictness, from which, if he deviate in never so small degree, he is doomed to fall." Byers v. Surget, 60 U. S. (19 How.) 312; Baker v. Humphrey, 101 U. S. 494; Henry v. Ramon, 25 Pa. St. 354. Courts of equity have inherent power to set aside judgments obtained by fraud, and that power is not taken away by the statute providing for a review of a judgment obtained on constructive notice.     Byers v. Surget, supra; Irvine v. Leyh, 102 Mo. 200; McClanahan v. West, 100 Mo. 309; Payne v. O'Shea, 84 Mo. 129; Sweet v. Maupin, 65 Mo. 65.     The conduct of Scofield in secretly instituting the attachment suit and failing to inform either L. S. Walter or Jacob Walter of the institution thereof or of his purpose, and his continuance of the relationship of attorney and client between them without an intimation of a change or intended change on his part and without any notice to Jacob Walter of his claim; the false statements made to the court in order to be permitted to take a default without actual notice to Jacob Walter, his client; the strange combination of Scofield, Davenport and Mrs. Fish in the pretended assignment of the judgment and sale of the land; the practically admitted combination between Scofield and Strother and Davenport at the sheriff's sale; the gross inadequacy of the price for which the land is pretended to have been sold at the sale; the bidding by Givan in Mrs. Fish's name under the instructions of Scofield, and the pretended bidding by Strother there after he had forbidden the sale publicly; and the secret purchase of the land including the McMannus lots by Strother, attorney for McMannus, to forbid

and prevent the sale in the proceedings; the sheriff's deed to Strother instead of to Givan or Mrs. Fish for all the land including the McMannus lots; and including the lot L. S. Walter had authorized Scofield to sell to the widow; all of these undisputed facts are proof, and any one of them is sufficient, showing fraud in the procurement of the judgment and in the sale. These were enough to entitle Jacob Walter to relief, even if the other facts and circumstances in evidence did not demonstrate the existence of fraud in all its hideous reality. Davis v. McCann, 143 Mo. 172; Merritt v. Poulter, 96 Mo. 237; Goode v. Crow, 51 Mo. 212; Byers v. Surget, supra; Griffith v. Judge, 49 Mo. 536; Wagner v. Phillips, 51 Mo. 117; Rogers v. Lee, 9 Fed. 721; Lane v. Black, 21 W. Va. 617; Rogers v. Marshall, 3 McCrary (U. S.) 76; Woods v. Downs, 18 Ves. 120; Briant v. Jackson, 99 Mo. 585; Curd v. Lackland, 49 Mo. 451; Sanderson v. Glass, 2 Ark. 296; Henry v. Ramon, 25 Pa. St. 354; Zeigler v. Hughes, 55 Ill. 288; Harper v. Perry, 28 Iowa 57; Wheeler v. Willard, 44 Vt. 640; Case v. Carroll, 35 N. Y. 385; Mason v. Ring, 3 Abb. (N. Y. App.) 210. (4) Givan and Strother both stand in the position of attorneys in the proceedings, and, therefore, can not pretend to be innocent or bona fide purchasers for value without notice. Gott v. Powell, 41 Mo. 416; Galpin v. Page, 18 Wall. (U. S.) 350; Harness v. Cravens, 126 Mo. 233; Taaffe v. Kelley, 110 Mo. 127; Muldrow v. Robison, 58 Mo. 331; Jennings v. Todd, 118 Mo. 296; Stephenson v. Smith, 7 Mo. 610; Martin v. Jones, 72 Mo. 23; Freeman v. Moffitt, 119 Mo. 280; Henry v. Sneed, 99 Mo. 407; Meier v. Blume, 80 Mo. 179; Conn. M. L. I. Co. v Smith, 117 Mo. 261; Barrett v. Davis, 104 Mo. 549; Davis v. Briscoe, 81 Mo. 27; Casey v. Steinmeyer, 7 Mo. App. 556; Ridgeway v. Holliday, 59 Mo. 444. (5) But Strother stands also in the position of having forbidden the sale and thereby cast a cloud on the proceedings and depressed bidding publicly, and then secretly buying the title of the pretended purchaser. Whether

this was by fraud or mistake, he can not hold title .thus acquired. Griffith v. Judge, 49 Mo. 540; Neal v. Stone, 20 Mo. 294; Abbey v. Stewart, 25 Pa. St. 416; Wooton v. Hinkle, 20 Mo. 293; Stewart v. Nelson, 25 Mo. 312. (6) Strother has no deed except the sheriff's deed, which at most can be under the circumstances no more than a quitclaim deed in effect, if it is valid at all, while Colburn and Scott are grantees in quitclaim deeds. Colburn has not even paid the consideration, but gave his note to be paid only when the title was clear. They all knew Walter's tenant was and had long been in actual possession. Neither of them was an innocent or bona fide purchaser for value without notice; but they purchased, if at all, with notice of and subject to all equities. Scott was bound by whatever was notice to Strother, his agent and partner. Ridgeway v. Holliday, 59 Mo. 44; Man v. Best, 62 Mo. 491; Stoffell v. Schroeder, 62 Mo. 147; Merrett v. Poulter, 96 Mo. 237; Halsa v. Halsa, 8 Mo. 303; Arnholt v. Hartwig, 73 Mo. 485; Corrigan v. Schmidt, 126 Mo. 304; Digby v. Jones, 67 Mo. 104; Stivers v. Horne, 62 Mo. 473; Austin v. Loring, 63 Mo. 19; Eoff v. Irvine, 108 Mo. 378; Greenlee v. Marquis, 49 Mo. App. 290; Paul v. Fulton, 25 Mo. 156; Cassady v. Wallace, 102 Mo. 575; Wetmore v. Woods, 62 Mo. App. 265; Campbell v. Laclede Gas Light Co., 84 Mo. 352.

*Given & Glenn* and *James T. Burney* for defendants in error.

(1) The notice of publication in the attachment suit of Scofield v. Walter, conformed to the requirements of the statute, and was sufficient. R. S. 1889, sec. 581; Haywood v. Russell, 44 Mo. 252; Young v. Downey, 150 Mo. 317; State ex rel. v. Tucker, 32 Mo. App. 620; Burnes v. Burnes, 61 Mo. App. 612; 17 Am. and Eng. Ency. Pldg. and Prac., p. 978. (2) Although the return of the sheriff in the attachment suit of Scofield v. Walter does not show that notice was

served on the tenant in possession of the farm, yet this fact will not vitiate the proceedings in that action nor affect the sale under the judgment therein.   Durossett's Admr. v. Hale, 38 Mo. 346; Huxley v. Harold, 62 Mo. 516; Stanton v. Boschert, 104 Mo. 393; Bryant v. Duffy, 128 Mo. 18.   (3)   The transfer of the bid on the land from Mrs. Fish to Strother, before the deed was made by the sheriff under the execution sale, did not invalidate the sale.   No title ever passed to Mrs. Fish, because title does not pass in such case until the money is paid and the sheriff's deed is delivered.   Strain v. Murphy, 49 Mo. 337; Leach v. Koenig, 55 Mo. 451; Blodgett v. Perry, 97 Mo. 263; Cravens v. Gordon, 53 Mo. 287; Massey v. Young, 73 Mo. 260; Carter v. Spencer, 7 Ired. (N. C.) 14. (4.)   Even if Walter originally had a good defense against the claim of Scofield for attorney's fees, it is too late to assert that defense in this case.   There was no fraud practiced by Scofield in obtaining the judgment.   "Whatever may be the rule elsewhere, it is well settled in this State that in order to set aside a judgment for fraud in a direct proceeding for that purpose, it must be made to appear that fraud was practiced in the very act of obtaining the judgment."   Lewis v. Henry's Admr., 54 Mo. 200; Shelbina Hotel Ass'n v. Parker, 58 Mo. 327; Obermeyer v. Einstein, 62 Mo. 341; Payne v. O'Shea, 84 Mo. 129; Murphy v. De France, 101 Mo. 151; s. c., 105 Mo. 53; Oxley Stave Co. v. Butler Co., 121 Mo. 614; Nichols v. Stevens, 123 Mo. 96; Moody v. Peyton, 135 Mo. 482; Hamilton v. McLean, 139 Mo. 678; Bates v. Hamilton, 144 Mo. 1; Fears v. Riley, 148 Mo. 49.   Whatever defense Walter had to the claim of Scofield should have been presented at the trial.   He was not prevented from making such defense by Scofield, in any sense of the term, except that Scofield did not tell him that the action had been brought and was pending.   But the law does not make it the duty of the plaintiff to personally inform defendant of the bringing of a suit.   (5)   The weight of the evidence shows that there was

no fraud practiced on Walter or his son, nor was any undue advantage taken of them, in the action brought by Scofield to compel payment of his fees for services rendered by him as their attorney. (a) Fraud will not be presumed except upon clear and satisfactory proofs. Bernecker v. Miller, 44 Mo. 102; Garesche v. MacDonald, 103 Mo. 1; Robinson v. Dryden, 118 Mo. 534. (b) Fraud will not be inferred where the transaction consists as well with fair dealing as with a fraudulent purpose. Henderson v. Henderson, 55 Mo. 534; Ames v. Gilmore, 59 Mo. 537; Page v. Dixon, 59 Mo. 43; Webb v. Darby, 94 Mo. 621; Chapman v. McIlwrath, 77 Mo. 38. (c) The burden of showing fraud rests upon the party attacking the judgment and sale thereunder, and must be clear and convincing. Forrester v. Scoville, 51 Mo. 268; Jackson v. Wood, 88 Mo. 77; Forrester v. Moore, 77 Mo. 651; Keiser v. Gammon, 95 Mo. 217; Ins. Co. v. Smith, 117 Mo. 261. (d) This court will, in an equity case, where the witnesses testify orally and the evidence is contradictory, as here, defer somewhat to the finding of the trial court. Chouteau v. Allen, 70 Mo. 336; Erskine v. Loewenstein, 82 Mo. 309; Bushong v. Taylor, 82 Mo. 666; Springer v. Kleinsorge, 83 Mo. 159; Berry v. Hartzell, 91 Mo. 138; Mathias v. O'Neill, 94 Mo. 520; McElroy v. Maxwell, 101 Mo. 308; Milling Co. v. Burnes, 144 Mo. 96; Taliaferro v. Evans, 160 Mo. 380. (6) There is no evidence worthy of consideration connecting Strother, Scott, Colburn, Mrs. Fish or Davenport with any supposed fraud or undue advantage in obtaining the judgment complained of or in selling the land thereunder. Thy had neither actual nor constructive notice of any supposed fraud. (7) Every reasonable presumption should be indulged to uphold a judicial sale and the rights of a purchaser thereunder. Strouse v. Drennon, 41 Mo. 289; Cabell v. Grubbs, 48 Mo. 353; Curd v. Lackland, 49 Mo. 451; Jones v. Manly, 58 Mo. 559; Mitchell v. Nodaway Co., 80 Mo. 257; Evans v. Robberson, 92 Mo. 192; Lovitt v. Russell, 138 Mo. 474. (8) Even though Scofield

had been guilty of fraudulent conduct in procuring his judgment against Walter, yet the other defendants in error, being bona fide purchasers without notice at the sale, under a judgment regular on its face, will be protected in their title to the land in controversy. 2 Freeman on Judgments (4 Ed.), sec. 509; Reese v. Kennedy, 43 Cal. 649; Stokes v. Geddes, 46 Cal. 17; Mackler v. Allenberg, 100 Mo. 337; Lindell Real Estate Co. v. Lindell, 142 Mo. 61; Harness v. Cravens, 126 Mo. 233. (9) Although the deed of Colburn was a quitclaim, yet he purchased from the record owner without knowledge of the equities of third parties (if any existed) and thereby obtained a good title. Elliott v. Buffington, 149 Mo. 663; s. c., 51 S. W. 408. (10) The record should show affirmatively that the writ of error was sued out within three years from the final judgment and decision, and was returned within the time required by law and that defendants in error were served with notice of the same. These facts not appearing in this record, the writ should be dismissed. Ham v. St. Louis Public Schools, 34 Mo. 181; Allen v. Allen, 64 Mo. App. 417; Ex parte Craig, 130 Mo. 590.

MARSHALL, J.—This is a bill in equity to set aside a judgment, upon an attachment, of the Cass Circuit Court, in favor of Scofield and against the plaintiff, rendered on September 14, 1894, and also to set aside the Sheriff's deed under said judgment, dated January 22, 1895, to George B. Strother, and also a quitclaim deed from Strother to John Scott, for a part of the land, dated January 24, 1895, and also a deed from Strother and Scott to D. M. Colburn, for the entire tract, dated January 25, 1895. The circuit court entered judgment for the defendants, and the plaintiff appealed to this court, where, on April 17, 1899, the plaintiff-appellant, dismissed his appeal, and on the same day he sued out this writ of error.

I.

· The defendants move to dismiss the writ of error on the ground that it was not sued out within three years after the rendition of the judgment in the circuit court as required by section 2275, Revised Statutes 1889, the statute in force when this writ was sued out. The judgment of the circuit court was rendered on February 4, 1896. The plaintiff, within proper time, filed a motion for a new trial, which was continued from time to time and finally overruled on May 5, 1896. As stated, this writ of error was sued out on April 17, 1899. This was within three years from the date on which the motion for new trial was overruled, but was more than three years after the date on which the judgment was rendered. The point presented for adjudication, therefore, is, which date is the date of the rendition of the judgment?

The defendants rely upon the case of Ham v. Public Schools, 34 Mo. l. c. 182, where Bates, J., said. "We think that the time within which the writ of error may be brought should date from the day of the rendering of the judgment, without regard to the motion for a new trial." Bay, J., concurred, in this view, and Dryden, J., dissented. The St. Louis Court of Appeals followed this ruling in Bank v. Reilly, 8 Mo. App. 544.

But this view did not long remain the law of this State, for in Riddelsbarger v. McDaniel, 38 Mo. 139, the court, speaking through Wagner, J., held that if a motion for a new trial was filed, the whole matter remained in the breast of the court so long as the motion for new trial was pending, and carried the whole case over from term to term until the motion for new trial was acted upon, and that "until that result is reached, it can not be said that the cause is finally determined." In Thomas v. Thomas, 64 Mo. 354, a writ of error was dismissed on the ground that it was prematurely sued out, in that it did not appear that the motion for new trial

had been disposed of, and HOUGH, J., said: "Until the motion to set aside the decree was overruled by the court there was no judgment from which an appeal could be taken, or which could be reviewed on writ of error." The rule laid down in Riddelsbarger v. McDaniel, supra, was quoted and followed in Givens v. Van Studdiford, 86 Mo. l. c. 154. In State ex rel. v. Philips, 96 Mo. 570, this court, speaking through BRACE, J., applied the same rule to a motion for a rehearing in the Kansas City Court of Appeals, and held that the opinion did not become the decision of the court upon which a judgment could be entered until that motion was disposed of, and this was true whether the motion was disposed of at the same or at a subsequent term. The rule was stated and these cases cited and followed in State ex rel. v. Smith, 104 Mo. l. c. 423, and by analogy the principle was applied to appeals and writs of error in divorce cases, under section 4510, Revised Statutes 1889.

The principle that until the motion for new trial is disposed of, the whole matter remains in the breast of the court, and, hence, there is no final judgment, was recognized and enforced by SHERWOOD, J., in McGurry v. Wall, 122 Mo. l. c. 619. The most striking illustration of the rule is found in St. Francis Mill Co. v. Sugg, 142 Mo. 364, where the motion for new trial was not disposed of for fourteen years after it was filed, and this court, per BARCLAY, J., held that it kept the whole matter in the breast of the court during all that time, and until it was disposed of there was no final determination of the cause.

In Scott v. Scott, 44 Mo. App. l. c. 603, Ham v. Public Schools, 34 Mo. 181, was relied on, and the Kansas City Court of Appeals refused to follow it, holding properly that it was in conflict with the later case of Thomas v. Thomas, 64 Mo. 353. That court per ELLISON, J., aptly and forcibly said: "Technically and properly, the judgment of the court after its decision, or after verdict, should not be rendered until after the

expiration of four days, in which a motion for new trial may be filed, if the term so long continues.    [Tidd's Practice, 903-905; Lane v. Kingsberry, 11 Mo. 402; St. Louis D. & L. Ass'n v. Augustin, 2 Mo. App. 132.]    And if such motion for new trial be filed the judgment is, of course, suspended until it is overruled.    In such case and for such purpose, the final judgment spoken of in this statute would not be considered as rendered until the motion for new trial was denied.    This view must be correct from the fact that were it otherwise, and the trial judge should take a motion for new trial under advisement (as is frequently done) for more than sixty days [sec. 4510, R. S. 1889, relating to appeals or writ of error in divorce cases was under consideration] he might wholly deprive the losing party of a hearing in an appellate court."

In addition to these cases and these considerations there is another most important reason for holding that the date of the overruling of the motion for new trial must be taken as the date of the rendition of the judgment.    Section 2248, Revised Statutes 1889, provides:    "No such appeal shall be allowed unless:    First, it be made during the term at which the judgment or decision appealed from was rendered," etc.    It is the settled law in this State that, except as to errors apparent on the face of the record proper, this court will not review errors of the trial court unless the error is called to the attention of the trial court by a motion for a new trial and the trial court thus given an opportunity to correct its error. [Pogue v. State, 13 Mo. 444; Howell v. Pitman, 5 Mo. 246; Warner v. Morin, 13 Mo. 455; St. Louis v. Brooks, 107 Mo. 380; Bevin v. Powell, 83 Mo. 365; State ex rel. v. Hitchcock, 86 Mo. 231; Baker v. Railroad, 107 Mo. 230; State ex rel. v. Burckhartt, 83 Mo. 430; Donaldson v. Thompson, 120 Mo. 152.]    This being true, if the appeal must be taken before the motion for new trial is overruled, the appeal would be unavailing, for this court would not review the action of the trial court, that court not having had a chance to correct its own

errors. *Per contra*, if the appeal to be availing can not be taken until the motion for new trial is disposed of, and if the motion for new trial is not disposed of until a term subsequent to that at which the verdict or decision was rendered, and if the date of the rendition of the decision or verdict and not the date the motion for new trial is overruled, is the date of the rendition of the judgment within the meaning of section 2275, Revised Statutes 1889, then the losing party in the circuit court would be effectually debarred from having the ruling of that court reviewed on appeal. For if he took the appeal before the motion for new trial was disposed of, he would not get a review because the appeal was prematurely taken, and if he did not take the appeal at the same term at which the verdict or decision was rendered, albeit the motion for new trial was still pending, the appeal would be too late under section 2248. All of which demonstrates that the true date of the rendition of the judgment appealed from or to correct which a writ of error is sued out, is the date upon which the motion for a new trial is overruled, for that is the time when the final judgment is rendered and the trial court finally acted. The same date controls as to preserving exceptions. To prevent a party from disposing of his property between the date the decision or verdict is rendered, and the date when the motion for a new trial is disposed of, a practice has grown up of entering a judgment as soon as the decision or verdict is rendered, and even before the motion for new trial is filed. This establishes an inchoate lien, which becomes a consummate lien only in the event the motion for new trial is thereafter overruled, and in that event the lien relates back to the date of the entry of the inchoate lien. But this condition arises out of the provisions of chapter 41, Revised Statutes 1899, relating to judgments, and not out of the provisions of articles 10 or 12 of chapter 8 relating to the Code of Civil Procedure.

It follows from what has been said that the case of Ham v. Public Schools, 34 Mo. 181, has been practically overruled

by the cases reviewed herein. So, to prevent further misapprehension, that case is now expressly overruled, and the rule is reaffirmed that the date of the rendition of the judgment referred to in sections 2275, Revised Statutes 1889 (sec. 837, R. S. 1899), and in section 2248, Revised Statutes 1889 (sec. 808, R. S. 1899), is the date when the motion for new trial is overruled. This results in the overruling of the motion of the defendants to dismiss the writ of error.

## II.

The facts necessary to be considered in the determination of this case, briefly stated, are these: Jacob Walter is, and at all the times hereinafter stated was, a resident of the State of Pennsylvania. His son Lloyd S. Walter resided in Kansas City. Lloyd held a power of attorney from his father to transact his business in Missouri. Lloyd had invested money for his father (and also for his sister) in land in Missouri, but took the title in his own name. About 1890 Lloyd determined to leave Kansas City and move to Texas. Before leaving he executed and recorded a deed to his father, covering land in Kansas City and the land in Cass county involved in this controversy. He also conveyed land in Kansas City, Missouri, and in Kansas City, Kansas, to his sister. This was intended to convey to each the land Lloyd had purchased for them with their respective money, the title to which he had taken in his own name. The father did not know for some time afterwards that this had been done. Lloyd then moved to Texas. At the time he made these conveyances Lloyd was indebted to various persons, among them to one Mitchell, in the sum of $2,300. Lloyd returned to Kansas City, in 1892, and Mitchell sued him and obtained a judgment against him. Under that judgment Mitchell caused an execution to be levied upon the land Lloyd had conveyed to his father, the plaintiff, had it sold and became the purchaser at the sheriff's sale. After-

wards Mitchell sued on that judgment, by attachment, in Kansas for the deficit of the debt after selling the Missouri land. Lloyd employed the defendant Ralph E. Scofield, an attorney in Kansas City, to defend the suits aforesaid.   Scofield advised Lloyd to compromise with Mitchell, and upon Lloyd's inquiry as to how much he would charge to attend to the cases, Scofield replied that as the case might be appealed to the Supreme Court of Missouri, or possibly to the Supreme Court of the United States, he would charge one thousand dollars.   Lloyd would not agree to pay that much, and they never agreed upon the fee to be charged.   Scofield, however, represented Lloyd and the plaintiff in the matter, as he did also in various other suits and matters.   Finally Lloyd, without Scofield's knowledge or assistance, compromised with Mitchell, by conveying to him certain other land, valued at about the amount of Mitchell's judgment and interest.   While engaged in representing Lloyd and the plaintiff in the Mitchell matter, Scofield ascertained from the deeds and papers placed in his hands by his clients that the plaintiff owned and had record title to the land in controversy in Cass county.   Lloyd and Scofield disagreed as to what Scofield's fees for services rendered should be. Scofield rendered Lloyd a bill for five hundred dollars, which Lloyd refused to pay.   Thereupon on July 6, 1894, while still acting as attorney for Lloyd and the plaintiff in other cases pending in the courts, Scofield began a suit, by attachment, against the plaintiff herein in the circuit court of Cass county, for an alleged balance of $894.85, for legal services rendered, and caused the lands of the plaintiff in Cass county to be levied upon under the writ of attachment.   A notice of the suit was published in a newspaper in Cass county, returnable to the September term, 1894, of that court.   The plaintiff had a tenant named S. A. Yantis, in possession of the land, but the sheriff did not notify the tenant of the levy of the attachment ten days before the return day of the writ, or at any other time, and did not certify in his return on the attachment writ that

he had done so.    Scofield knew the plaintiff's address in Pennsylvania and never notified him.  Scofield met Lloyd frequently in Kansas City, after he instituted the attachment suit, and Lloyd was several times in Scofield's office during the pendency of that suit, consulting with Scofield, as his and plaintiff's attorney, about other cases in his hands as such attorney, but Scofield never told Lloyd anything about the attachment suit. Naturally, therefore, no appearance was made by this plaintiff in the attachment suit, and Scofield secured a judgment by default in that case on the fourteenth of September, 1894.

Scofield was, at that time, attorney for a man named Thomas C. Davenport, and also for a woman named Alice A. Fish, who were respectively seeking divorces in the courts of Jackson county.   Scofield claims that he needed some money and to raise it he offered to sell his judgment, in attachment, against the plaintiff to Davenport.    The latter had no money, but Mrs. Fish had, and it is claimed that she purchased Scofield's said judgment, paying therefor $866.    Mrs. Fish said she gave Davenport that amount "to invest in a farm" for her. It was agreed between Scofield and Davenport that Scofield should attend to the collection of the judgment, and that they two would divide all that was realized therefrom over and above the amount Mrs. Fish had put into the venture.    Scofield had an execution issued and the land advertised.    The sale was set for January 22, 1895.    Scofield and Davenport went from Kansas City to Harrisonville, Cass county, to attend the sale.    George B. Strother, another defendant herein, an attorney, lived on the land adjoining the Walter land, was employed by one McMannus, who had purchased from Walter a portion of the land levied upon under the writ of attachment to attend the sale  and notify bidders that McMannus claimed to own said part.    Strother told John Scott, another defendant herein, that the Walter's farm was to be sold and proposed to Scott that they buy it.    Scott agreed, and authorized Strother to buy it if it did not sell for more than thirty dollars

an acre. Strother attended the sheriff's sale, and after giving notice as to McMannus's claim, he commenced to bid on the remainder of the land. During the sale, or as defendants claim, *after* the sale, it is not material which, Strother and Scofield had negotiations looking to Strother becoming the purchaser. Strother was willing to give one thousand dollars for it, and Davenport wanted fifteen hundred. Finally it was agreed that Strother would pay $1,250 for the land. The sheriff's sale resulted in the land being knocked off to Mrs. Fish for the sum of $498. Thereafter on the same day Strother gave a check for the $1,250, and at the request of those present the sheriff executed a deed to Strother, instead of to Mrs. Fish. The defendants say this was done because Mrs. Fish was not present and could not then make a deed to Strother.

Davenport and Scofield divided the profits, over the amount due Mrs. Fish, between them, amounting to some $104.85 to each. Davenport and Mrs. Fish obtained their desired divorces, entered into a new marital venture with each other, and left the State.

Strother made a quitclaim deed to a half interest to Scott and on January 24, 1895, Strother and Scott executed a quitclaim deed to the whole tract to D. M. Colburn, another defendant herein, for an alleged consideration of $3,322. But Colburn paid no money. He gave his note for that amount payable "one day or when the title is clear on the Walter farm after date." In fact it is conceded that Colburn has never paid anything. There was a deed of trust for $3,000 on the land. So that if the sale to Colburn represented the true value of the land, it was worth $6,322. The land comprises some one hundred and fifty-four acres, and is variously valued, by the witnesses, at from $45 to $75 an acre. During all this time neither the plaintiff, Jacob Walter, nor his son Lloyd, nor his tenant in possession of the land, Yantis, knew anything about the attachment suit or of the proceedings therein. They first learned of it when a Mr. Huber, a resi-

dent of Cass county, wrote to Lloyd on January 24, 1895, that the land had been sold, and Mr. Jones, another resident of Cass county, called on Lloyd in Kansas City on January 25, 1895, and verified what Mr. Huber had written, and told Lloyd that it was some lawyer in Kansas City that had caused it to be sold, and thereupon Lloyd investigated and ascertained the foregoing to be the facts.    This suit in equity was then begun on January 28, 1895, to set aside the judgment, and all the deeds aforesaid.    Scofield, Strother, Davenport, Scott, Mrs. Fish, Colburn and the sheriff of Cass county were made parties defendant.    Their answer is joint and is a general denial.

The circuit court of Cass county never acquired jurisdiction in the attachment case, and its judgment is therefore void.    This being true the sheriff's deed conveyed no title to Strother, and he having no title, conveyed none to Scott, and Colburn acquired no title from Strother and Scott.

Section 543, Revised Statutes 1889, prescribes the manner of serving writs of attachment.    The third paragraph of that section provides the manner of levying a writ of attachment upon lands or tenements.    It requires the officer levying the writ to state in his return the quantity and situation of the land and to declare that he has attached all the right, title and interest of the defendant in the same or so much thereof as shall be sufficient to satisfy the debt, interest and costs. It also requires the officer to file in the recorder's office of the county where the real estate is situated an abstract of the attachment, showing the names of the parties to the suit, the amount of the suit, the date of the levy, and a description of the real estate levied upon, which abstract the recorder is required to record in the land records, the officer making the abstract to pay the cost of such recording.    Then it further provides, in addition to all the foregoing, as follows:    "And the officer shall moreover give notice to the actual tenants, if any, at least ten days before the return day of the writ, and state

the fact of such notice and the names of the tenants in his return."

At the time the attachment writ was levied in this case, S. A. Yantis was the tenant of the plaintiff, Jacob Walter, of the land seized, and was in the actual possession thereof. The sheriff gave him no notice whatever. The sheriff's return upon the attachment writ shows that he complied with the requirements of the third paragraph of section 543, except that he did not give the notice therein required, and that he did not state in his return the fact of such notice and the names of the tenants. The sheriff's return showed that the defendant in the attachment suit, Jacob Walter, who is the plaintiff in this suit, was not served because he could not be found in Cass county. And the record in the attachment suit, which was introduced in evidence in this case, shows that the defendant, Jacob Walter, was brought in only by publication.

The provisions of section 543, Revised Statutes 1889, above quoted, requiring notice to the tenant in possession and the recital of notice in the sheriff's return has long been in the statutes of this State. It was exactly the same in 1856, when the case of Lackey v. Seibert, 23 Mo. 85, was decided (R. S. 1845, ch. 11, art. 1, sec. 12). In that case LEONARD, J., said: "It is objected, however, that in order to render the attachment complete, so as to create the lien, it is not enough that the levy be indorsed on the writ, but that it is also necessary that notice of the attachment should be given to the actual tenant, if any, ten days before the return day, and that this fact, together with the name of the tenant, should be stated in the officer's return. It is to be observed that this notice is not requisite to be given at the time the attachment is levied, and does not seem to be part of the ceremony required to constitute a levy of the attachment, and adopted in order to give public notice of the fact, *but was intended for the benefit of the debtor, by providing another security, where the proceeding might be without personal notice, against his*

*land being taken from him by a judicial proceeding, of which
he had no notice in fact.* And we do not think that an omission of this character, in the return, even assuming that there
was a tenant in possession, ought to be allowed to defeat the
sale. Such a construction of these proceedings, founded upon
a mere formal matter, without substance *in cases like the
present,* would not be for the interest, generally, of either
debtor or creditor, however beneficially it might operate in a
single case on account of the peculiar hardship of that case."

To fully appreciate the force and extent of the foregoing
excerpt from the opinion in that case it must be stated that at
that time the statute was the same as paragraph three of section
543, Revised Statutes 1889, except that it did not require an
abstract of the attachment to be filed in the recorder's office;
and further that in the case then undergoing adjudication the
fact was that the defendant had been personally served with
process and was in court actively defending the case, and that
he contended that under the statute it was necessary to serve
the tenant, even in cases where the defendant, the owner, had
been personally served. When this is understood, the remark
of the learned judge who delivered the opinion in that case,
that "in cases like the present," such a construction, that is,
requiring notice to the tenant in addition to personal service
upon the defendant, would be "a mere formal matter, without
substance," "would not be for the interest, generally, of either
debtor or creditor," becomes, at once, of material significance,
and decisive importance, and plainly demonstrates the force
of what preceded that remark, that the object of the statute
"was intended for the benefit of the debtor, by providing
another security, where the proceeding might be without personal notice, against his land being taken from him by a judicial proceeding, of which he had no notice in fact." Or, otherwise stated, the clear meaning of that opinion is that the statute
required the notice to the tenant in all cases except when the
owner was personally served with process, and that it did not

require it when the owner had actual, personal notice in fact of the pendency of the attachment suit, because notice to the tenant, who would notify the landlord, was unnecessary when the landlord was personally served with process.

There can be no doubt about the correctness of Judge LEONARD's opinion in the case cited, nor of the correctness of his conclusion under the facts of that case. He gave full force and a sensible meaning to the provision of the statute quoted. It is surprising, therefore, that his decision should have been since so misunderstood and misapplied. The question came before this court in 1866, in the case of Durossett's Admr. v. Hale, 38 Mo. 346. In that case the defendant's property had been attached. The defendant was not personally served with process, as in the Lackey case, but was sought to be brought in by constructive notice, by publication. The publication only notified the defendant that an action had been commenced against him for damages for the destruction of property, and that if he did not appear at the next term of the court, a judgment would be rendered against him and his property would be sold. Nothing was said in the publication, as the statute required, to the effect "that his property had been attached." It was properly held that the notice by publication was fatally defective and the judgment based thereon was void. But after thus sufficiently disposing of the case the judge delivering the opinion fell into the unnecessary error of adding the following: "Another objection was, that the sheriff's return did not show a valid levy on the real estate, for the reason that it did not state that notice had been given to the tenants in occupation of the premises ten days before the return thereof, nor give any reason why it was not done. It would no doubt be entirely proper that the return in such cases should state these things distinctly; but it has already been decided that the giving of such notice constitutes no essential part of the levy itself, which is not required to be made at the same time, and that a sheriff's sale of the real estate

levied on and sold, under a levy like this one, will not be set aside for that reason only.   [Lackey v. Seibert, 23 Mo. 85.] Nor did this objection constitute any good ground for setting aside the judgment."

Several errors are apparent in this decision.   First.   It refers to Lackey v. Seibert, supra, as authority, when, in fact, Lackey v. Seibert holds exactly the reverse.   It fails to comprehend the reason given in Lackey v. Seibert for holding a notice to the tenant unnecessary, to-wit, that the owner had been personally served and was in court actively defending the case, whereas in the Durossett case, the owner was not personally served, was not in court, and judgment by default had been rendered, upon an insufficient notice by publication. Second.   It totally misconceives the object of the statute, in that it confuses the question of the validity of the lien, with the question of whether the court acquired jurisdiction to render any judgment.   The portion of the section of the statute under consideration does not refer to liens at all.   It prescribes "the manner of serving writs of attachment."   Unless the writ is served in the manner prescribed, the court acquires no jurisdiction to render any judgment except in cases like Lackey v. Seibert where the defendant is personally served.   The question is one of jurisdiction and not one of lien.   Third.   The reasoning employed in the Durossett case, that because the notice to the tenant is not required to be served at the same time that the attachment is levied, and therefore that provision of the statute must be wholly ignored and read out of the law, is fallacious.   As was pointed out in Lackey v. Seibert, supra, the reason underlying this provision of the statute is to give the owner, the defendant in the attachment, notice through his tenant in possession, when the owner is not personally notified, so that his land will not be taken by judicial process without notice.   It is an additional notice to the notice by publication, and manifestly it is a better and surer way of notifying the owner than the notice by publication. It is analo-

gous to the notice that has always been given to the owner in ejectment cases. Fourth. It is a notice that the law requires to be given, when the owner is not personally served, and it is just as necessary as the notice by publication. The court in the Durossett case gave a strict and proper construction to the provision of the statute requiring a notice by publication and held the judgment void because the statute was not strictly complied with, and then erred in totally refusing to give effect to this provision of the statute which required another notice to the defendant. It thereby was glaringly inconsistent. It had as much right to ignore and read out of the statute the provision as to notice by publication as it had to ignore and read out of the statute the provision as to notice to the tenant. And the reason given for ignoring the latter provision, that it is not required to be given simultaneously with the levy is no reason at all. For the notice by publication is not required to be given simultaneously with the levy either, nor is the service of the writ upon the defendant required to be made simultaneously with the levy, nor is the abstract of the attachment now required to be filed in the recorder's office required to be filed simultaneously with the levy. Yet it has uniformly been held that these provisions of the statute must be complied with. By what process of reason or logic or construction can a compliance with those provisions be deemed essential to jurisdiction, and this provision be absolutely wiped off the statute book, must be left to others to explain, as no such process has yet been shown and none is conceivable.

However, the Durossett case and the Lackey case have since been referred to as settling the construction to be put upon this provision of the statute. [Huxley v. Harrold, 62 Mo. l. c. 520; Stanton v. Boschert, 104 Mo. l. c. 399.] And Lackey v. Seibert, was referred to in Bryant v. Duffy, 128 Mo. l. c. 22, as authority for the proposition that the failure of the sheriff to file the abstract of the attachment in the recorder's office vitiated the attachment, although it will be ob-

served that at the time Lackey v. Seibert was decided the statute contained no provision requiring such an abstract of the record to be so filed. That provision was inserted in this section of the statute by the revision of 1865.

But an examination of these cases that have referred to the Durossett case, without analyzing it, shows that a consideration of this provision of the statute, requiring notice to the tenant when the owner was not personally served with process, was not necessary to a decision of those cases, or was not involved in these cases. In Huxley v. Harrold, 62 Mo. 1. c. 520, after citing both Lackey v. Seibert, and Durossett's Admr. v. Hale, and upon their faith holding that the validity of a lien in attachment was not affected by the failure to give the notice to the tenant in possession, it is said: "As Hartzell [who was the defendant in the attachment case] if not served with personal process, appeared to and defended the action, a general judgment was the only one authorized by the statute. [Wagner's Stat., p. 189, sec. 40.] In consequence of this statutory requirement, it is wholly unnecessary for the judgment to recite any attachment lien in order to impart additional efficacy to that lien." This is the real point decided, and properly decided in that case, and is in consonance with the ruling and the reason given for the ruling in Lackey v. Seibert, because in both cases the defendant personally appeared and defended the attachment case, but is wholly unlike the Durossett case, where there was only a notice by fatally defective publication.

Stanton v. Boschert, 104 Mo. 393, involved only a question of priority of attachment lien between two attaching creditors, one having begun his suit first, and the other having caused the abstract of the attachment to be filed in the recorder's office first. No right of the defendant was involved, for it is stated (1. c. 397) that the defendant appeared, pleaded in abatement and contested all the attachments. In the course of the opinion, however, Lackey v. Seibert, Durossett's Admr. v. Hale, and Huxley v. Harrold are referred to (without

noticing the radical differences above pointed out between them), and it was said that the provision of the statute requiring notice to the tenant had been construed in those cases, and as the statute had not been changed since, the same construction should be placed upon that provision. It will be noted, however, that the question of notice to the tenant was not raised in the attachment suit nor in the case under adjudication, the only question being as to the priority of the second attaching creditor over the first attaching creditor because the second had the abstract of the attachment filed in the recorder's office first. So that, what was said in that case about the provision of the statute was likewise unnecessary, and is of no binding force.

The result is that Lackey v. Seibert, correctly stated the law, and it has ever since been the law in this State, and that so much of Durossett's Admr. v. Hale, 38 Mo. l. c. 348, as misapplies the rule laid down in Lackey v. Seibert, never was and is not now the law, and that case is no authority for the proposition that the provisions of section 543, Revised Statutes 1889, requiring notice to be served on the tenant in possession and such fact to be stated in the sheriff's return, in all cases except when the defendant is served personally or when he appears to the action, can be ignored or dispensed with, but on the contrary such notice, and recital in the return, except in the cases stated, is indispensable to the jurisdiction of the court to enter any judgment, based upon an attachment levied upon lands or tenements.

The reason for not requiring the notice to be served on the tenant when the owner is personally served or appears and defends the action becomes apparent upon the slightest reflection. In suits by attachment, the property or *res* is brought into court. The notice by publication or to the tenant is simply a notice to the defendant that his property has been seized, and is not a summons bringing the defendant into court. If the defendant fails to appear the court can only render a

special judgment binding the *res*—no personal judgment or judgment over can be rendered against the defendant.    On the other hand, if the defendant is served with process or appears to the action, the court has jurisdiction not only over the *res* seized, but also over the person of the defendant, and therefore can enter not only a special judgment but also a general judgment.    This being true it is essential that all the requirements and safeguards and protections prescribed by the statute as to the manner of serving an attachment and securing jurisdiction over the *res* by notice and not by summons, should be strictly and faithfully complied with.    It has been held that any material omission of the requirements as to the published notice or a failure to file an abstract of the attachment in the recorder's office (which manifestly was only intended to give notice to third persons and not to the defendant) renders the judgment void.    There is much greater reason for enforcing a strict compliance with the statute requiring notice to a tenant in possession than there is for requiring a strict compliance with the requirements as to the published notice, or *quoad* the defendant who has at least some interest in the matter, for requiring the statute requiring the abstract of the attachment to be filed with the recorder.    But whether there is greater or less reason for the observance of the one requirement than of the other, the statute is the same as to both—one is as much required as the other—one was deemed by the lawmakers of as much importance as the other, and it is the duty of the court to enforce both, except, as pointed out, when the defendant is personally summoned or appears to the action, and in that case the reason for the requirements of the statute becomes inapplicable, and notice to the tenant of no substance or value, as was well said in Lackey v. Seibert.

It follows that in the case at bar the circuit court of Cass county never acquired jurisdiction to enter any judgment in the attachment case of Scofield v. Walter, and, hence, the

Vol 167 mo—36

judgment, the sale thereunder, and the deed from the sheriff to Strother, and from Strother to Scott and from Strother and Scott to Colburn, are all void.

This conclusion renders it unnecessary to consider the questions of fraud in this case, but silence in this regard must not be construed into sanction of the course adopted by Scofield in the attachment proceeding, nor as holding that the titles acquired under that proceeding could be held valid.

The judgment of the circuit court is reversed and the cause remanded to the circuit court with directions to enter a decree setting aside the judgment, the sale and all the deeds thereunder to Strother, to Scott and to Colburn, and for costs in favor of the plaintiff herein and against all the defendants except the sheriff, who is not a necessary party to this action and has no interest in the matter. All concur.