MAY STERLING, Administratrix, Respondent, v. PARKER-WASHINGTON COMPANY, Appellant.

St. Louis Court of Appeals, November 3, 1914.

1. ABATEMENT AND REVIVAL: Action for Personal Injuries: Death of Plaintiff After Judgment. Where, in an action for personal injuries, judgment was entered upon a verdict for plaintiff, it was not, upon the subsequent death of plaintiff, a condition precedent to the revivor of the action in the name of the administrator, under Sec. 5438, which provides that only actions "other than those resulting in death" are revivable, that an amended petition be filed, alleging that the action was for injuries which did not result in plaintiff's death, since the cause of action was merged in the judgment which was entered before plaintiff died.

2. JUDGMENTS: Merger of Cause of Action. Where a judgment is entered upon a verdict, the cause of action is marged therein, notwithstanding a motion for a new trial is pending.

3. ———: Final Judgment. A judgment does not become final so long as a motion for a new trial is pending, and the time for taking an appeal or suing out a writ of error is computed from the date such motion is ruled upon.

4. ———: **Vacating Judgment: Power of Court.** A judgment remains under the control of the court during the term at which it is rendered, even though no motion for a new trial be filed, and may be vacated by the court during such term; and a motion for a new trial carries the judgment over from term to term, until the court acts on the motion.

5. ———: **Lien: Time of Becoming Effective.** A judgment, from the day of its entry, constitutes an "inchoate lien" upon the defendant's property, subject to be defeated by its vacation, and becomes a "consummate lien" if the motion for a new trial is thereafter overruled; such lien then relating back to the original entry of the judgment.

6. **STIPULATIONS: Construction: Estoppel: Abatement and Revival.** In an action for personal injuries, judgment was entered upon a verdict for plaintiff, and he subsequently died, pending a motion for a new trial filed by defendant. A stipulation was thereafter entered into, suggesting the death and agreeing that the administrator of decedent's estate should be substituted as party plaintiff and that the cause should be at once revived in the name of the administrator as plaintiff, but reserving to defendant the "right to make the same objections to the revivor that it could have made if said revivor had been made pursuant to statute instead of by stipulation." On appeal, defendant assigned as error that the cause was not revivable, under Sec. 5438, R. S. 1909, for the reason that an amended petition had not been filed, setting forth that the action was for injuries which did not result in plaintiff's death. *Held*, that objection to the revivor having been made for the first time in the appellate court, the stipulation should be taken in its broadest significance, and, so construed, it meant that everything required by statute as a condition precedent to a revivor should be regarded as having been done, and hence defendant was in no position to urge that the filing of an amended petition was essential.

7. **APPELLATE PRACTICE: Stipulations: Construction on Appeal.** Where an objection involving the construction of a stipulation is made for the first time on appeal, the stipulation should be taken in its broadest significance.

8. **JUDGMENTS: Death of Party After Judgment: Construction of Statute.** Sec. 1922, R. S. 1909, providing that if either party shall die after verdict and before judgment is actually entered thereon, the court, within one term thereafter, may enter final judgment in the name of the original parties, does not apply in a case where judgment was entered upon the verdict immediately and before the death of the party.

185MoApp13

9. **NEW TRIAL: Vacating Order Granting New Trial: Power of Court.** The trial court sustained defendant's motion for a new trial after plaintiff's death, and, on the same day, set aside the order granting a new trial, and upon the cause being revived in the name of the administrator of decedent's estate, overruled the motion. On appeal, defendant assigned the action of the court in vacating the order as error, on the ground that the death of plaintiff deprived it of the power to vacate the order. *Held*, either that the court had no power to make any order affecting the motion for a new trial and hence, in law, none was made, or else, if it had power to sustain the motion, it also had power to set the order aside on the same day.

10. **FOREIGN LAWS: Cause of Action Arising in Another State: Laws Governing.** An action in this State for personal injuries received in another State is governed by the rulings of the courts of this State as to the principles of the common law applicable, where there is no evidence as to the laws of such other State.

11. **————: Judicial Notice.** Judicial notice cannot be taken of a statute of another State.

12. **————: Pleading and Proof.** Where one relies for his right of recovery or defense upon the law of another State, as declared by the adjudicated precedents of its courts, the decisions so relied upon must be both pleaded and proved.

13. **MASTER AND SERVANT: Injury to Servant: Pleading: Necessity of Proving Specific Charges of Negligence.** In an action by a servant for injuries sustained by reason of the shattering of a defective chisel with which he was working, where the petition alleged generally that defendant was negligent in furnishing plaintiff a chisel which was not reasonably safe for use, and specifically that the chisel had been negligently tempered by defendant's foreman in such a manner that it was brittle, *held* that it was essential to a recovery by plaintiff that he prove such specific allegations of negligence.

14. **NEGLIGENCE: Pleading: Necessity of Proving Specific Charges of Negligence.** Where, in a negligence action, a general charge of negligence is followed by a specific charge, it is a prerequisite to a recovery by plaintiff that he prove such specific charge.

15. **APPELLATE-PRACTICE: Conclusiveness of Verdict.** A verdict is conclusive, on appeal, as to every fact that was resolved by the jury.

16. **MASTER AND SERVANT: Injury to Servant: Sufficiency of Evidence.** In an action by a servant for injuries sustained

by reason of the shatering of a defective chisel with which he was working, evidence *held* to sustain a finding that the particular chisel was tempered by defendant's foreman and by him given to plaintiff to use.

17. ————: Assumption of Risk. While a servant assumes the ordinary risks incident to his employment, after the master has performed his duty, he does not assume any risk arising from the master's negligence.

18. ————: Injury to Servant: Sufficiency of Evidence. In an action by a servant for injuries sustained by reason of the shattering of a defective chisel with which he was working, evidence *held* sufficient to warrant submission of the case to the jury.

19. ————: ————: Instructions. In an action by a servant for injuries sustained by reason of the shattering of a defective chisel with which he was working, the petition alleged that defendant negligently furnished a chisel not reasonably safe for use, which had been negligently tempered by defendant's foreman, so that it was brittle. Plaintiff's evidence showed that common coal was used in tempering the chisel, and that the use of blacksmith's coal was reasonably necessary to properly temper it. The court instructed, on behalf of plaintiff, that if defendant's foreman had so used *common coal instead of* blacksmith's coal, which was necessary to make the chisel suitable for its intended use, and if such chisel was furnished to plaintiff and it broke and injured him, he could recover. *Held*, that the instruction was not vulnerable to the objection that it was broader than the petition, in authorizing a recovery on the theory that the use of soft coal in the tempering process was negligence, since it merely submitted the theory that the foreman was negligent in the matter of tmpering the chisel, which was in accordance with the theory counted on in the petition. *Held, further*, that the instruction was not vulnerable to the objection that it was broader than the petition, in authorizing a recovery for negligence in furnishing improper coal, since it did not authorize a verdict on account of the *furnishing* of common coal, but on account of the *use* of such coal in the tempering process. *Held, further*, that the instruction was not vulnerable to the objection that it unduly empha-. sized particular facts or commented on the evidence, by reason of its reference to the use of common coal.

20. ————: ————: Instructions: Refusal. In an action by a servant for injuries sustained by reason of the shattering of a defective chisel with which he was working, *held* that the refusal of an instruction requested by defendant, that if plaintiff was not struck by a piece of steel flying from the chisel furnished him, he could not recover, even though he was struck by

some other substance, was not prejudicial error, in view of other instructions requiring a finding that a piece of the chisel struck plaintiff, and that the jury, could not infer negligence or that the chisel was defective from the fact that it broke and plaintiff was thereby injured, and that plaintiff must prove that it was not safe and that he was injured in consequence thereof.

21. INSTRUCTIONS: Refusal: Covered by Other Instructions. It is not error to refuse a correct instruction, where the points it covers are covered by the instructions given.

22. DAMAGES: Personal Injuries: Excessiveness of Recovery. A verdict of $7054 for injury resulting in the total loss of the sight of one eye and impairment of the sight of the other was not excessive.

23. ————: ————: Effect of Death of Plaintiff After Verdict. After a verdict had been rendered for plaitiff, in an action for personal injuries, under instructions permitting an award for loss of earnings in the future, and judgment had been entered thereon, plaintiff died. Subsequently, defendant's motion for a new trial was overruled. On appeal, defendant assigned as error that "future loss of earnings was improperly allowed in the verdict as reinstated by the court on ruling on the motion for a new trial." Held, that the verdict was not "reinstated" by overruling the motion for a new trial, and that plaintiff's death, subsequent to the rendition of the verdict and the entry of the judgment, could not operate to affect the amount of damages which the jury, at the time of the trial, were lawfully authorized to assess.

24. NEW TRIAL: Surprise: Newly Discovered Evidence. In an action by a servant for injuries sustained by reason of the shattering of a defective chisel with which he was working, held, in view of the disclosures made by the record, that plaintiff's evidence, that common coal was improperly used to temper the chisel, was not such a surprise to defendant as would warrant the granting of a new trial to it, after verdict against it, especially in view of the fact that defendant made no affidavit of surprise at the trial. Held, further, that the affidavits as to newly-discovered evidence were not sufficient to warrant the granting of a new trial, since the alleged new evidence was merely cumulative.

### On Motion for Rehearing.

25. MASTER AND SERVANT: Injury to Servant: Contributory Negligence. Knowledge by a servant of defect in a tool from which he sustains injury is to be reckoned with in considering the question of his contributory negligence.

26. ———: ———: **Pleading: Negativing Contributory Negligence.** In an action by a servant for personal injuries, it is not necessary that his petition or his proof negative the existence of knowledge by him that the appliance causing his injury was defective; that being a matter of defense.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields,* Judge.

AFFIRMED. REHEARING OVERRULED.

*S. Mayner Wallace, Wm. R. Orthwein* and *Shepard Barclay* for appellant.

(1) There has been no amendment of the petition, or other showing in the record, to suggest that plaintiff's cause of action is revivable by the administratrix. Only actions "other than those resulting in death" are so revivable, and that showing must appear. After the verdict was set aside (May 9, 1912) the trial court had no power, after the death of plaintiff, in March, 1912, to reinstate the verdict in his name, without a showing such as is required by the revival statute, if at all. R. S. 1909, sec. 5438; Showen v. Railroad, 164 Mo. App. 41. (2) As it was the duty of the plaintiff to make the proper parties to the suit upon the filing of his petition, so it is his duty, upon the death of any one of the parties plaintiff or defendant, to take the proper steps to bring in the necessary representatives. 1 McQuillin, Pl. & Pr., sec. 487, p. 466. (3) The plaintiff died in March, 1912 (at the February term of the circuit court, R. S. 1909, sec. 4150). The power of the court below to enter judgment on the verdict in the name of the original plaintiff expired at the next (April, 1912) term of said court, whereas the judgment was set aside at that term; and later that order was vacated at the same term, and the motion for new trial was overruled, several terms later (August 7, 1912) contrary to R. S.

1909, secs. 1922-3. State ex rel. v. Stratton, 110 Mo. 426. The judgment (although written in the record) is not deemed entered, and does not become operative, until the motion for new trial is overruled. Walter v. Scofield, 167 Mo. 537; Loan Assn. v. Augustin, 2 Mo. App. 132; Lane v. Kingsberry, 11 Mo. 408; Scott v. Scott, 44 Mo. App. 600. (4) When the motion for new trial was sustained, the verdict was set aside; and as it appeared, later, that plaintiff had died in March, 1912, the court had no power thereafter to proceed to vacate that order or take other steps until facts were shown to warrant a revival of the action, in cases "other than those resulting in death." That showing was never made. R. S. 1909, sec. 5438; Showen v. Railroad, 164 Mo. App. 41; Sargeant v. Rowsey, 89 Mo. 617; Gamble v. Daugherty, 71 Mo. 599. (5) The peremptory instruction to find for defendant should have been given. (a) The admissions of plaintiff, as to the facts, have the same force as admissions in the pleadings. Shirts v. Overjohn, 60 Mo. 308; State v. Brooks, 99 Mo. 143. (b) Plaintiff admitted his thorough acquaintance with sharpening and tempering of tools, during many years, and also admitted that "when you work with chisels they frequently chip off;" that he had "seen that when other people sharpened them and when" (he) "sharpened them." Plaintiff's evidence affirmatively shows that he was thoroughly experienced and fully aware of whatever danger existed from the use of such tools, and knew that such an accident as happened was a risk of the service in which he was engaged. Hence defendant is not liable (even if Missouri law applies which we do not admit). (c) There is no testimony that Winlan tempered that chisel which did the harm. Hence it was error to submit that supposed fact, as the court did (in the first instruction) without evidence of it. Rose v. Rubeling, 24 Mo. App. 369; Alexander v. Harrison, 38 Mo. 258. (d) The evidence shows that,

when the accident occurred, plaintiff was the chief representative of defendant at Muskogee. Winlan had previously left defendant's service, leaving plaintiff in charge of the asphalt plant and machinery, so that whatever duty there was, for inspection of tools for use in that plant of defendant, at that time, devolved on the plaintiff (under his own testimony), and the undisputed facts, so that the omission of plaintiff to use reasonable care to inspect those tools could not be ascribed to defendant, in such circumstances. Knorpf v. Wagner, 195 Mo. 637; Railroad v. Long, 137 Pac. 1156 (Okla.); Henry v. Boiler Co., 151 Mo. App. 595; Modlagl v. Kaysing Co., 248 Mo. 587. (e) There was no evidence by plaintiff (who best could tell) that he was unaware how the chisel had been tempered (if it really had been tempered) or what sort of coal had been used therefor. His affirmative testimony shows he knew every fact which his employer might know, as to the safety of the chisel, in respect of the condition of hardness, which he says caused his injury, which condition of hardness plaintiff says he always desired. Those facts required the peremptory instruction for defendant. Modlagl v. Kaysing Co., 248 Mo. 587; Knorpf v. Wagner, 195 Mo. 637; Henry v. Boiler Co., 151 Mo. App. 595; Graves v. Railroad, 162 S. W. 298; Lead Co. v. Swyers, 161 Fed. 687; Railroad v. Duran, 134 Pac. 876; Railroad v. Johnson, 207 Fed. 521; O'Hara v. Mach. Co., 171 Fed. 394; Herricks v. Railroad, 257 Ill. 264. (f) The undisputed and admitted facts show there is no liability. Rahm v. Railroad, 129 Mo. App. 683; Henry v. Boiler Co., 151 Mo. App. 595, 160 Mo. App. 615. (6) The defendant's request for instruction 2 sought to inform the jury briefly, that if plaintiff's eye was not hurt by a piece of the chisel he used, then the verdict should be for defendant, even though he was struck in the eye by some other substance while using a chisel that broke. (7) There is no inference of

negligence from the happening of such an accident. Railroad v. Dunn, 134 Pac. 876. (8) The cause of action arose in Oklahoma and the law of that place governs the liability. Farrar v. Railroad, 149 Mo. 197; Newlin v. Railroad, 222 Mo. 391. (9) Oklahoma as a separate jurisdiction has been governed by laws of which the court will take judicial notice, namely, Federal statutes, administered by Federal courts, to which the present State courts are regular successors by the terms of Federal law. R. S. 1909, secs. 6283, 1833; State v. Moseley, 38 Mo. 380. Under those laws applicable to Oklahoma, plaintiff having full knowledge of the facts in regard to the sharpening and tempering of chisels, as described by him had no cause of action under the laws of Oklahoma contained in the Federal statutes, of which this court should take judicial notice. Mollhoff v. Railroad, 15 Okla. 540; Co. v. O'Nesky, 6 Ind. Terr. 180; Farrar v. Railroad, 149 Mo. 197; 7 Fed. Stats. Annot., p. 278. (10) Under so much of the law of Oklahoma, of which the court may judicially take notice, without other proof, the facts of this case create no liability. Rahm v. Railroad, 129 Mo. App. 686; Railroad v. Duran, 134 Pac. 876; Railroad v. Mase, 63 Fed. 115; Railroad v. O'Leary, 93 Fed. 737; Railroad v. Charless, 162 U. S. 359; Ruemmeli Co. v. Cahill, 14 Okla. 422. (11) The first instruction for plaintiff was erroneous in several particulars: (a) It raised new issues not made by the pleadings by turning the issue of defendant's case (in respect of furnishing reasonably safe tools) into a different issue, namely: As to whether "common coal" or "blacksmith's coal" was used by Wennland in tempering the chisel in question. It is error to give an instruction changing the issues of the pleadings. Mays v. Pryce, 95 Mo. 603; Bloom v. Pape, 36 Mo. App. 603; 1 McQuillin Pl. & Pr., sec. 768; Feegan v. Seed Co., 92 Mo. App. 240; Davidson v. Transit Co., 211 Mo. 320. (b) The instruction was without

evidence to support the assumption that the tempering was the cause of the injury to plaintiff. Winlan not only tempered but sharpened the tools (two different sorts of acts). There is no evidence that tempering was the cause of the breakage of the chisel, as distinguished from sharpening, which the petition does not charge as negligence. The chisel might have broken as easily because it was sharpened carelessly, and no such charge is made by the petition. It was the duty of plaintiff to show which of those acts was the cause. Without such evidence, the first instruction should not have been given, but on the contrary the peremptory one for defendant. Warner v. Railroad, 178 Mo. 134; Root v. Railroad, 195 Mo. 367; Reiss v. Steam Co., 128 N. Y. 103; Grant v. Railroad, 133 N. Y. 657; Railroad v. Victory, 47 S. W. 440; Gas Co. v. Kaufman, 48 S. W. 434; Hughes v. Railroad, 91 Ky. 531; Hanrahan v. Railroad, 45 N. Y. Supp. 477; Railroad v. De Graff, 29 Pac. 664. (c) That instruction also calls for a finding that ''the use of blacksmith's coal was necessary'' to temper the chisel, but there was no testimony to support such a finding. Such form of instruction (even if there had been such evidence) is erroneous as tending to raise a side or immaterial issue. Root v. Railroad, 195 Mo. 348; Feegan v. Seed Co., 92 Mo. App. 240. (d) That instruction for plaintiff was erroneous also, in singling out and emphasizing the ''coal'' features and repeating the same idea over and over again; plainly commenting on the evidence. Chappell v. Allen, 38 Mo. 221; Chouquette v. Barada, 28 Mo. 498; Gage v. Mears, 107 Mo. App. 147; Bank v. Currie, 44 Mo. 91; Railroad v. Stock Yards, 120 Mo. 559; Swink v. Anthony, 96 Mo. App. 426; Meyer v. Railroad, 45 Mo. 137; Siegrist v. Arnot, 10 Mo. App. 197. (12) The verdict is excessive, because (after plaintiff's death) some of the elements of damage in the findings on the second instruction for plaintiff were unwarranted.

The future loss of earnings were improper to allow in the verdict, as reinstated by the court on ruling on the motion for new trial in August, 1912, after plaintiff had died.

*Wm. L. Bohnenkamp* and *Watts, Gentry & Lee* for respondent.

(1) There was no occasion for the administratrix to file an amended petition, for the administratrix merely asked the benefit of the judgment which had already been rendered in favor of the plaintiff. (2) The demurrer to the evidence was properly overruled. The mere fact that plaintiff had had some experience in sharpening and tempering tools did not make it necessary for him to set his judgment up against the judgment of defendant's foreman who had tempered the chisel in question, assume that the foreman had not done his work properly and make a careful investigation of the condition of the chisel. He had the right to assume that a reasonably safe tool was furnished him. The law requires no test by the servant. He has a right to assume that his master has done his duty as to furnishing suitable appliances and places to work. Bible v. Railroad, 169 Mo. App. 519; Gutridge v. Railroad, 105 Mo. 526; Franklin v. Railroad, 97 Mo. App. 482. Even if the plaintiff knew that blacksmith coal should have been used and was not used, that fact alone did not make him assume the risk of the master's negligence in using the wrong kind of coal. Mere knowledge by a servant that the master has been negligent does not bar his recovery, under the decisions of this State. The rule is that a plaintiff cannot assume the risk of his master's negligence. Booth v. Air Line, 76 Mo. App. 516; Pauck v. St. Louis Dressed Beef & Prov. Co., 159 Mo. 467; Curtis v. McNair, 173 Mo. 270; Garcia v. Cons. Co., 121 Mo. App. 709; Brady v. Rail-

road, 206 Mo. 509; Coin v. Lounge Co., 222 Mo. 488. (3) There was no evidence to support instruction 2 offered by defendant and refused by the court, hence its refusal was not error. Besides it was fully covered by instruction 3, given at defendant's request. Dales v. Railroad, 152 S. W. 401. (4) This court is not bound by the decisions of the Oklahoma courts and it cannot take judicial notice of them, but they must be pleaded and then be proven like any other fact is proven. Morton v. Royal League, 100 Mo. App. 76; Kavanaugh v. Royal League, 158 Mo. App. 234; Ginnochio, Admr., v. Railroad, 155 Mo. App. 163. (5) It was proper for the instruction to permit recovery for negligent use of common coal instead of blacksmith's coal, though common coal was not mentioned in the petition. The allegation of negligent tempering was broad in its scope, stated the ultimate fact, as the law requires a pleader to do, and did not state the evidence, properly leaving that to be developed at the trial. R. S. 1909, secs. 1813, 1818, 1831. Under this allegation, any fact which tended to show that the chisel was negligently tempered was admissible, and being properly admitted, it was proper for the court to submit such fact in its instructions. Mulderig v. Railroad, 116 Mo. App. 655; Bragg v. Railroad, 192 Mo. 231; Knight v. Donnelly, 131 Mo. App. 152; Brother v. Cox, 16 Mo. 166; Gates v. Watson, 54 Mo. 585; Lessing v. Sulzbacher, 35 Mo. 445; Alcorn v. Railroad, 108 Mo. 81; White v. Railroad, 84 Mo. App. 411; Davis v. Guarnieri, 46 Ohio St. 470; Meng v. Railroad, 108 Mo. App. 553; Reilley v. Cullen, 159 Mo. 328. The court would have erred if it had not specifically pointed out the use of common coal, for that was the only specific act of negligence in the tempering process shown by the evidence. Sommers v. Transit Co., 108 Mo. App. 319; Mulderig v. Railroad, 116 Mo. App. 655; Schaaf v. Box & Basket Co., 131 S. W. 937; Schroeder v. Transit Co., 111 Mo. App. 75-76; Casey

v. Bridge Co., 114 Mo. App. 65; Delo v. Mining Co., 160 Mo. App. 45. Defendant's instruction 3 given by the court, was broad enough to include the use of the wrong kind of coal. Hence, if there was error, it was common to both parties, and not reversible error. Morgan v. Mulhall, 214 Mo. 464; Smart v. Kansas City, 208 Mo. 204. (6) There is no merit in the criticism that the word "tempering" was used when "sharpening" was the process that might have caused the chisel to break. The evidence shows, and it is a matter of common knowledge, that tempering is a part of the sharpening process. The evidence shows that tempering with soft coal spoiled the chisel. (7) It was absolutely necessary to single out the question of using the wrong coal. Hence it was not error to do so. (8) The verdict is not excessive. Phelan v. Barber Asphalt Pav. Co., 227 Mo. 667. (9) The affidavits in support of the motion for a new trial made no such showing of newly discovered evidence as would justify the granting of a new trial, for the matters therein set forth were merely cumulative and were not such as would probably change the result on a second trial. Due diligence was not shown. Folding Bed Co. v. Railroad, 148 Mo. 478; Howard v. Ter. Assn., 110 Mo. App. 583. New trials should be granted on that ground as an exception, and refused as a rule. Cook v. Railroad, 56 Mo. 382. This court will defer to the discretion of the trial court in refusing to grant a new trial on the ground of newly discovered evidence. The only true rule is to leave these matters of practice to the sound, judicial discretion of the trial court. The Mayor of Liberty v. Burns, 114 Mo. 426; Summers v. Met. Ins. Co., 90 Mo. App. 691.

ALLEN, J.—This is an action instituted by one James Sterling to recover damages for injuries sustained by him while in the employ of the defendant corporation as its servant.

On December 16, 1911, at the December term of the circuit court of the city of St. Louis, a verdict was rendered in favor of plaintiff for $7054 and judgment entered thereupon. Within due time the defendant filed its motion for a new trial, which motion was continued and remained undisposed of until the April term, 1912, of said circuit court. In the meantime, to-wit, during the month of March, 1912 (the exact date not appearing) plaintiff died. On May 9, 1912, at the said April term, the court sustained the motion for a new trial, but on the same day set aside and vacated such order. Thereafter, on May 20, 1912, at the same April term, a stipulation in writing, duly entered into by counsel of record for plaintiff and defendant, was filed in the cause, suggesting the death of plaintiff, James Sterling, and consenting to the revival of the cause in the name of May Sterling, theretofore duly appointed administratrix of plaintiff's estate. The pertinent provisions of this stipulation are as follows:

"It is further agreed that said administratrix may be substituted as a party plaintiff in the above entitled cause, and that said cause shall at once be revived in the name of said administratrix as plaintiff. The defendant, however, reserves the right to make the same objections to the revivor of this cause that it could have made if said revivor had been made pursuant to statute, instead of by stipulation."

Upon the filing of such stipulation an order was duly entered by the court reviving the cause in accordance therewith. Thereafter, on August 7, 1912, at the June term, 1912, of said court, defendant's motion for a new trial was overruled, and thereafter the defendant duly perfected its appeal to this court.

At the time of plaintiff's injury he was in the employ of the defendant at Muskogee, Oklahoma. On March 22, 1909, in the course of his duties as defendant's servant, he was engaged in removing a certain

"bushing" from a valve, working with a hammer and chisel. As the result of a blow struck upon the head of the chisel, pieces broke off from the sharpened or cutting end thereof, one of which, it is said, flew into plaintiff's eye causing injuries resulting in the total loss of the sight thereof.

The negligence alleged in the petition is that defendant negligently furnished plaintiff for his work a certain steel chisel which was not reasonably safe for use for said purpose, in that it "had been negligently tempered by defendant's agent and foreman having charge of keeping its tools in repair and furnishing them to its employees in such a manner that it was brittle, which made said chisel reasonably unsafe for the purposes for which it was intended to be used, because of danger of pieces of said chisel breaking off when it was struck by the hammer, as it was necessary that it should be struck when used for said purpose."

The answer is a general denial, coupled with a plea of assumption of risk.

The evidence discloses that plaintiff had been in the employ of the defendant for some time prior to going to Muskogee, Oklahoma. Plaintiff's testimony is to the effect that he went to the last-mentioned place in January, 1909, expecting to be made foreman over defendant's plant located there, but that upon his arrival one Colglazier, defendant's superintendent, changed the plan and made one Winlan (or Wennland) foreman, and directed plaintiff to work under Winlan and to do whatever the latter told him to do; that a part of Winlan's duties was to temper the chisels and other such tools used in prosecuting defendant's business at this place; and that on the day prior to that upon which plaintiff was injured, Winlan told plaintiff that he would be away on the following day, and furnished plaintiff with certain chisels which plaintiff says he had previously seen

Winlan sharpening and tempering; that plaintiff took one of these chisels on the following morning in order to remove the bushing in question, and that by the first blow struck this chisel with a hammer, which plaintiff describes as being a light blow, the cutting end of the chisel was shivered, pieces flying therefrom, one of which entered plaintiff's eye.

On behalf of plaintiff there was testimony corroborating his own to the effect that he was not foreman of the plant at Muskogee, but that Winlan was, and that it was the latter's duty to temper tools of the character here in question; and expert testimony going to show that the chisel, which was in evidence before the jury, was too highly tempered and consequently brittle and fragile. There was also evidence tending to show that the improper tempering of the chisel came about by reason of the use of common soft coal supplied by defendant and used in the tempering process, and expert testimony to the effect that blacksmith coal, or charcoal, should have been used therefor; that when common soft coal is used to furnish the heat for such purpose the tool which is being tempered becomes covered with a coating, so that when it is placed in water and drawn therefrom, in the tempering process, the colors cannot be distinguished so as to enable one to tell when it is being properly tempered; and also that the sulphur in such coal has a tendency to "bite" the steel of which the tool is composed "in such a manner that it crystallizes or draws the carbon away from the steel."

On behalf of defendant there was testimony, contradicting that of plaintiff, tending to show that plaintiff, and not Winlan, was foreman of defendant's plant at Muskogee, Oklahoma, in which he was injured, and that it was plaintiff's duty to temper and sharpen the tools with which he performed his work.

The foregoing is, in substance, the case made. Any further details of the evidence, necessary to be

touched upon, will be referred to in the course of the opinion.

I.   The first point made by learned counsel for the appellant is that there was no proper revivor in the name of plaintiff's administratrix.   It is pointed out that under section 5438, Revised Statutes 1909, only actions "other than those resulting in death" are revivable.   It is said that it must affirmatively appear that the action was one for injuries which did not result in plaintiff's death, and that an amended petition should have been filed embodying such an allegation, and such showing made.

As to this appellant relies upon Schowen v. Railway, 164 Mo. App. 41, 148 S. W. 135.   But the last-mentioned case does not deal with a situation such as is here presented; for there, while the case was pending and prior to a verdict and judgment, it was revived in the name of the administrator, who filed an amended petition repeating the allegations of the original petition respecting the cause of action, alleging the death, the appointment of the administrator and his substitution as plaintiff, but containing no averment that the death did not result from the injury caused by the negligence pleaded; while in the instant case the death of plaintiff occurred after the verdict had been had and judgment entered thereupon, and the cause of action merged in such judgment.

In this immediate connection (and whereby we may also dispose of certain other questions raised in the premises), we may say that appellant contends that the judgment, though written in the record on the day upon which the verdict was rendered, viz., December 16, 1911, is not to be deemed entered until the motion for new trial was overruled, to-wit, August 7, 1912, three terms of court later.   While it is true that a judgment does not become final so long as a motion for a new trial is pending and un-

disposed of, and the time for taking an appeal or suing out a writ of error is to be reckoned from the overruling of such motion (see Walter v. Scofield, 167 Mo. 537, 67 S. W. 276), it cannot be doubted, we think, that when, as here, a judgment is at once entered upon a verdict, there is a judgment in the case, and the cause of action is then merged in that judgment. The judgment, however, remains under the control of the court, during the term at which it was so rendered, even though no motion for a new trial be filed, subject to being vacated or set aside; and a motion for new trial will carry it over from term to term until the court acts upon the motion. That the law recognizes the existence of the judgment from the date of its original entry appears from the fact that it constitutes from the day of such entry an inchoate lien upon the defendant's property—subject of course to be defeated by the setting aside of the judgment—becoming a consummate lien in the event the motion for a new trial is thereafter overruled, and such lien then relating back to the date of the original entry of the judgment. [See Walter v. Scofield, supra, l. c. 548; State v. Taylor, 183 Mo. App. 441, 166 S. W. 1071; Millar v. Transit Co., 216 Mo. 99, 115 S. W. 521.]

But we think that the question raised pertaining to the revival is not here a live one, but is foreclosed by the stipulation entered into by the parties through their counsel. That stipulation provides that the cause may be revived in the name of the administratrix—the defendant however reserving the right to make the same objections thereto that it could have made if done "pursuant to statute." No objection whatsoever was made to reviving the cause at the time, but on the contrary it was done by consent, pursuant to this stipulation; though the defendant attempted to reserve the right of objection above mentioned. Appellant's position is that this stipulation did not

relieve plaintiff of the duty of making an affirmative showing that the injury was one not resulting in death. But we think that this is not tenable. Taking the language of the stipulation in its broadest significance, as we think we should do where objection is raised for the first time on appeal, it may be regarded as meaning that if every step be taken which the law requires to be taken in order to revive the cause "pursuant to statute," the defendant nevertheless attempts to reserve the right to object thereto. And though it is difficult to see what right of objection could be reserved under such circumstances, the stipulation should, we think, be so construed. In reliance upon this stipulation plaintiff omitted to take the statutory steps to revive the action; and it may be assumed that in the absence of such stipulation all of the requisite steps would have been taken, "pursuant to statute," whatever they may be.

II. It is also urged that the power of the court below to enter judgment on the verdict in the name of the original plaintiff expired at the next (April, 1912) term of the court after the rendition of the verdict, under the provisions of section 1922, Revised Statutes 1909 (see secs. 1922-23). This section reads: "After a verdict shall be rendered in any action, and after an answer of confession in any suit brought, if either party die before judgment be actually entered thereon, the court may, within one term after such verdict or answer, enter final judgment in the name of the original parties." But this statute has no application here. It has reference to a situation where a verdict has been rendered upon which no judgment has been entered in the trial court. Here a judgment was immediately entered upon the verdict. The point has been expressly ruled in Millar v. Transit Co., supra, l. c. 103.

III.  It is also urged that inasmuch as the plain-. tiff died in March, 1912, the court had no power on May 9, 1912, to vacate the order which it had previously made on the same day sustaining defendant's motion for a new trial, the cause not then having been revived.  But if the court had no power to take any steps whatsoever during the period mentioned, as appears to be contended, then it had no power to make the order sustaining the motion for a new trial which it immediately proceeded to set aside.  Either it had no power to make any order affecting the motion for a new trial, and hence none was in law made, or if it had the power to sustain the motion for a new trial then it had the power also to set aside such order on the same day.  There can therefore be no merit in this contention.

IV.  Another question should be disposed of before coming to the merits of the case proper.  It is contended that, inasmuch as the cause of action arose in Oklahoma, it is to be governed by the laws applicable to that jurisdiction, though no suggestion appears to have been made as to this below.  But it is clear that under' the circumstances our courts will follow their own precedents in applying the principles of the common law relative to the reciprocal rights and duties of the parties arising out of the relation of master and servant.  Nothing was shown whatsoever below as to the laws existing in the State of Oklahoma at the time in question.  No statute of that State or decision of its courts was pleaded or put in evidence.  If there was any statutory law in force in Oklahoma at the time, touching the matter in hand, we could not take judicial notice of it.  And if one, for his right of recovery or defense, relies upon the law of a sister State as declared by the adjudicated precedents of the courts thereof, the decisions thus relied upon are required, under our rule of practice, to be

both pleaded and proved. [See Ginnochio v. Railroad, 155 Mo. App. 163, 134 S. W. 129; Kavanaugh v. Royal League, 158 Mo. App. 234, 138 S. W. 359; Morton v. Royal League, 100 Mo. App. 76, 73 S. W. 259.] There is here no question touching the right to apply the statute law of the forum, as in Davis v. McColl, 179 Mo. App. 198, 166 S. W. 1113, referred to by appellant; and much of what is there said is without application in the instant case. Other phases of the question need not be discussed.

V. It is insisted that the court erred in overruling appellant's demurrer to the evidence. As to this it may be said that plaintiff's evidence undoubtedly tends to support the general allegation of the petition, to the effect that defendant negligently furnished him a chisel which was not reasonably safe for use. But it was, of course, necessary for plaintiff to establish, prima facie, the more specific allegations of his petition that the chisel had been negligently tempered by defendant's foreman in such a manner that it was brittle, whereby it was rendered not reasonably safe for the purposes for which it was intended to be used.

It was appellant's contention throughout the trial of the case that Winlan was not defendant's foreman at all, but that plaintiff was the foreman, and charged with the duty of tempering and sharpening such tools. As to this there was a sharp issue of fact below, which was resolved by the jury, whose verdict is now conclusive thereupon.

The contention is here made, however, that the evidence shows that Winlan had left defendant's employment the day before the injury, and that if plaintiff was not foreman there was at the particular time no foreman over him. Plaintiff's testimony is to the effect that Winlan laid out these chisels for plaintiff's use on Sunday, the day before that upon which plaintiff was injured, telling plaintiff that he would be

away on the following day and directing plaintiff what to do in his absence. If in point of fact Winlan did not return, but severed his connection with the company, as is claimed, plaintiff's testimony indicates clearly that he knew nothing of this at the time, but that he was following Winlan's directions on the next day as he had been instructed to do by defendant's superintendent.

The further contention is that the evidence entirely failed to show that Winlan tempered the particular chisel which broke. It is unnecessary to rehearse in detail the testimony respecting this matter. Plaintiff's evidence is to the effect that it was Winlan's duty to sharpen such tools, and that he saw Winlan previously sharpening a "bunch" of chisels which Winlan placed upon a work bench on the Sunday above mentioned, telling plaintiff that they were for his use and that on the following day plaintiff took from this lot of chisels the one which broke. Upon the whole the testimony was such as to justify a finding by the jury that this particular chisel was in fact tempered by Winlan and given to plaintiff for his use.

It is said that plaintiff was perfectly aware of and assumed the risk of any such injury. But, under the case made by plaintiff, there is no room for defendant to escape liability upon the ground of assumption of risk, for, while plaintiff assumed the ordinary risks incident to the employment, after the master had performed its duty, he did not assume any risk arising from the negligence of the master, under the well established rule of decision in this State. [See Crader v. Railroad, 181 Mo. App. 526, 164 S. W. 678, and authorities cited.]

And plaintiff's evidence tends to show that he was so far inexperienced in such matters that he was unable to tell that the chisel was improperly tempered by looking at it, or without making such tests

as would not be required or expected of a servant under such circumstances, and that he was wholly unaware that danger lurked therein.

Beyond doubt plaintiff's evidence tends to establish the negligence charged, however much countervailing testimony there may be on defendant's part; and hence the demurrer was properly overruled.    [See authorities cited in Crader v. Railroad, supra.]

VI.    The first instruction for plaintiff is bitterly complained of in several particulars, and hence we set it out in full, as follows:

"If the jury find from the evidence in this case that on the 22nd day of March, 1909, the defendant was doing certain construction work in Muskogee, Oklahoma, and that at said time and place the plaintiff was in the employ of defendant, but was not defendant's foreman, and was not entrusted by defendant with the duty of tempering or sharpening tools;

"And if the jury further find from the evidence that on said day in the course of the discharge of his duties as the servant of defendant it became necessary for plaintiff to remove a certain bushing from a valve, and that, in order to properly do said work, it was necessary for him to use a hammer and chisel;

"And if the jury further find from the evidence that when plaintiff attempted to use said chisel, as he was holding the same in his left hand with the sharp end of the chisel on said bushing, he struck the same with the hammer which he held in one hand, said chisel broke and that a piece of said chisel was thereby caused to fly into plaintiff's right eye and to injure the same so as to destroy the sight of said eye;

"And if the jury further find from the evidence that said chisel had been tempered by one Wennland, and that said Wennland at the time he tempered

said chisel was a foreman employed by defendant and was entrusted by the defendant with the duty of tempering and sharpening such tools as were furnished by defendant for plaintiff's use in discharging his duty as defendant's servant, and that, in tempering said chisel said Wennland used what is known as common coal instead of using blacksmith's coal in making the fire in which to heat said chisel while tempering said chisel;

"And if the jury further find from the evidence that the use of blacksmith's coal was necessary for said purpose, in order to properly temper said chisel, so as to make it reasonably safe and suitable for the purpose for which it was intended, and that the use of common coal, instead of blacksmith's coal, for said purpose, caused said chisel to be brittle so that it would be likely to break off when it was struck with a hammer when being used in the ordinary manner;

"And if the jury further find from the evidence that said chisel at the time it was furnished by defendant to plaintiff, for his use (if you find from the evidence that it was so furnished by defendant) was, by reason of common coal instead of blacksmith's coal having been used in tempering said chisel, not reasonably safe for the use for which it was intended and to which plaintiff was applying it;

"And if you further find from the evidence that the defendant knew, or by the exercise of ordinary care would have known of the said condition of said chisel before furnishing it to plaintiff, and that defendant was guilty of negligence in using common coal instead of blacksmith's coal in the tempering of said chisel, and that defendant was guilty of negligence in furnishing said chisel, so tempered, to plaintiff for said work;

"And if the jury further find from the evidence that as a direct result of the negligence of defendant,

as aforesaid (if you find it was so negligent) said chisel was caused to break and injure the plaintiff;

"And if the jury further find from the evidence that at the time of and prior to his injury plaintiff was exercising ordinary care for his own safety, then the plaintiff is entitled to recover."

This instruction is assailed upon the ground that it raises a new issue not made by the pleadings, and is broader than the petition, in authorizing a recovery upon the theory that the use of common soft coal in the tempering process was negligence. The petition contains a general charge of negligence in furnishing plaintiff with a chisel not reasonably safe, followed by a more specific charge that the chisel was negligently tempered by defendant's foreman in such manner that it was brittle, which made it "unreasonably unsafe" for the purposes for which it was intended. The last-mentioned allegation, though more specific than that which preceded it, nevertheless merely charges a negligent tempering of the tool by the foreman, whereby it was rendered brittle and unsafe. The evidence respecting the use of common coal instead of blacksmith's coal tended to sustain the latter assignment of negligence, for it tended to show in what particular the foreman was negligent in tempering the tool, and was the only evidence of any particular act of negligence on the part of the foreman in such tempering process.

And we think that it was not necessary for plaintiff to specifically allege that common coal was negligently used, in order to permit the introduction of this evidence and justify the court in instructing along this line. Under our Code "only substantive facts necessary to constitute a cause of action or defense" need or should be pleaded (Sec. 1813, Rev. Stat. 1909); and a party is not required to state evidence in his pleading (Sec. 1918, Rev. Stat. 1909). The evidence relating to the use of common coal appears to

have first come into the case, at the trial, through a letter written to plaintiff by Winlan long after plaintiff's injury, which was referred to by plaintiff in the course of his cross-examination and which, upon being produced at defendant's request, was read in evidence by defendant's counsel. Later other evidence was introduced by both parties touching this matter. And with this evidence in the case, we think that the court was warranted in instructing the jury as to this particular act of the foreman in connection with the tempering process. In this respect the instruction appears not broader, but narrower, than the petition, in that it confines plaintiff's right of recovery to one act alone on the part of the foreman, in proof of his alleged negligent tempering of the tool.

It is contended, in effect, that the instruction authorizes a recovery as for negligence on the part of the defendant in furnishing improper coal at its plant for smithing purposes, and in this way changes the issues made by the pleadings, which related only to the foreman's negligence. But an examination of the instruction will reveal that it does not authorize a verdict for the *furnishing* of common coal by defendant to its foreman, but for the *use* of such coal in tempering the tool.

The contention that there is no evidence tending to prove that the foreman used common coal instead of blacksmith's coal is disposed of by what we have said above. There was ample evidence on this score.

The instruction is further said to be vicious in that it singles out particular facts, giving them undue emphasis, and is a comment upon the evidence. But we think that the well known principles thus invoked, and which under other circumstances might well apply to an instruction such as this, have here no application. Plaintiff had specifically alleged that his injury was due to the negligent tempering of the chisel by defendant's foreman, not resting his case upon the more

general allegation that the defendant had negligently furnished him a tool which was unsafe by reason of being improperly tempered, which the defendant knew or could have discovered by the exercise of ordinary care. [See Crader v. Railway, supra.] The only specific act of negligence on the part of the foreman in tempering the tool which the evidence tended to establish was in using improper coal for such purpose. With the pleadings and evidence in this shape, it does not seem that the instruction is subject to attack upon the grounds just mentioned. It merely submitted plaintiff's case upon the theory that the only evidence adduced to establish the specific negligence of the foreman, alleged in the petition, was that pertaining to the use of common coal in the tempering process. We think that this was not error. Respondent asserts that it would have been error under the circumstances to have done otherwise, i. e., if the instruction had followed the language of the petition and authorized a recovery if the jury found that the chisel "had been negligently tempered" by the foreman, "in such manner that it was brittle." But that question is not before us. We feel satisfied, however, that no reversible error was committed in narrowing the right of recovery as above indicated, and that this instruction thus submitting the case is not subject to the criticism that it unduly emphasizes particular facts, or that it comments upon the evidence.

The instruction is said also to be erroneous in requiring the jury to find that the use of blacksmith's coal was "necessary" for the purpose of tempering. But we think there can be no reversible error in this. Plaintiff's evidence goes to show that the use of blacksmith's coal was at least reasonably necessary for the tempering process, as appears from the testimony of plaintiff's expert witness. And at most the use of this term merely cast an unnecessary burden upon the plaintiff.

VII. Complaint is made of the refusal of an instruction offered by defendant which sought to have the jury told that if they believed from the evidence that plaintiff's eye was not struck by a piece of steel flying from the chisel, then the verdict should be for defendant, even though plaintiff was struck in the eye by some other substance. But the refusal of this instruction could not have been prejudicial error, in view of the other instructions in the case. Not only did plaintiff's main instruction, quoted above, require a finding that a piece of the chisel flew into plaintiff's eye, but an instruction given for defendant told the jury that they could not "presume or infer negligence nor that the chisel was defective from the fact that it broke or splintered *and that plaintiff was thereby injured*," and that plaintiff must prove that the chisel was not safe, etc., and "that plaintiff *was injured in consequence thereof*." [See Dales v. Railway Co., 169 Mo. App. 183, 152 S. W. 401.]

VIII. The further contention is that the verdict is excessive. We think that the verdict, upon its face, cannot be said to be so excessive as to warrant inter-ference by this court. Plaintiff lost the sight of one eye altogether and his evidence is that the sight of the other eye had thereby become greatly impaired.

But it is said that "the future loss of earnings were improper to allow in the verdict as reinstated by the court on ruling on the motion for new trial in August, 1912, after plaintiff had died." But the ver-dict was not "reinstated" by overruling the motion for a new trial. The verdict was rendered on Decem-ber 16, 1911, and judgment entered thereupon on the same day. And we do not see that plaintiff's death, some months later, could operate to affect the amount of damages which the jury at the time of the trial were lawfully authorized to assess.

IX. It was contended below, and is complained of here, that defendant was surprised by the appearance in the case of the evidence relating to the use of common coal; and a new trial was asked upon the ground, among others, of newly-discovered evidence touching this matter, and affidavits were filed in support thereof and a counter-affidavit by plaintiff. But we shall not discuss this matter further than to quote from the memorandum of the learned trial judge, handed down in overruling the motion, as follows:

"I think the record will show that the defendant must have known before trial the kind of coal used would be one of the elements of the case, because they introduced themselves evidence on that subject. And the affidavit of the plaintiff's counsel shows that the deposition of James Sterling, the plaintiff, was taken by the defendant, and filed, as early as the 25th day of May, 1911, in which the defendant's counsel asked specific questions about the coal that was used, showing that they anticipated that that question would arise in the trial of the case. The affidavits filed by the defendant as to newly-discovered evidence do not show any new evidence, but simply cumulative evidence; and in my judgment are not sufficient to warrant a new trial. Besides, there was no affidavit of surprise made, as required by law, during the trial of the case; and a request for continuance, in order to procure such evidence; but the case was submitted to the jury on the evidence adduced by both sides as to the use of coal."

As we perceive no reversible error in the record the judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.

## ON MOTION FOR REHEARING.

ALLEN, J.—We have carefully examined and considered the points made by learned counsel in their brief filed in support of appellant's motion for a rehearing. But our views respecting the questions involved have not been thereby altered. One point, strenuously pressed in the motion and the accompanying brief, is that the foregoing opinion is in direct conflict with the decision of the Supreme Court in Epperson v. Postal Tel. Cable Company, 155 Mo. 346, 50 S. W. 795, 55 S. W. 1050. It is pointed out that in the Epperson case it is said: "The servant must allege and prove, not only that the danger or defect was known to the master, but was unknown to plaintiff, and any statement of claim which does not include both of these allegations of fact discloses no cause of action, and is, consequently, fatally defective." And it is urged that there was here neither allegation nor proof that the defect in the tool in question was unknown to plaintiff.

The above opinion sufficiently indicates the evidence adduced respecting this matter. And so far as concerns the necessity of pleading plaintiff's want of such knowledge and of affirmatively establishing the same, in order to state and prove a prima-facie cause of action, the law is well settled adversely to the contention of counsel. Under the authorities to which we have referred—to which many may be added—it is clear that it was not incumbent upon plaintiff to negative the existence of knowledge on his part that the tool was defective, in order to state a cause of action against the master. If the defect was one occasioned by the master's negligence, the danger arising therefrom was not a risk assumed by the servant, under the law of this State; and knowledge of such defect on the part of the servant would be a matter to be reckoned with in considering the question of plaintiff's con-

tributory negligence. [See Jewell v. Bolt and Nut Co., 231 Mo. 176, 132 S. W. 703; George v. Railroad, 225 Mo. 364, 125 S. W. 196.] And it was of course not necessary for plaintiff to allege and prove that he was not guilty of contributory negligence, this being a matter of defense.

In fact the Epperson case, supra, is not authority for appellant's contention. The language quoted therefrom, and relied upon, is expressly stated to be but the expression of the individual views of the learned author of the opinion. [See Epperson v. Cable Co., supra, l. c. 354.] And in Fisher v. Central Lead Co., 156 Mo. l. c. 485, 56 S. W. 1107, this *dicta* is expressly disapproved. It was not then the law in this State; nor is it now.

Other questions raised are sufficiently disposed of in the opinion. With the concurrence of the other judges, the motion for rehearing is overruled.